# CHARLESTON

## GINN & COMPANY v. SCHOOL BOOK BOARD.

Submitted September 5, 1907.     Decided October 29, 1907.

SCHOOLS AND SCHOOL DISTRICTS—*Renewal.*

> A publisher of school books, having a contract with a school book board for furnishing school books, cannot compel such board to continue or renew his contract for five years after its expiration on the ground that the board has changed books without a sufficient vote. (p. 432.)

Application by Ginn & Co. for writ of *mandamus* to the school book board of Berkeley county and others.

*Writ Denied.*

HERBERT FITZPATRICK and BOWMAN & BYRER, for petitioners.

IRA E. ROBINSON and FAULKNER, WALKER & WOODS, for respondents.

BRANNON, JUDGE:

Under the school book law, Code, Edition of 1899, chapter 45, section 57a VIII, Annotated Code of 1906, section 1654, Ginn & Company had a contract with the school board of Berkeley county for furnishing certain books for use in the free schools of that county, dated 24 February, 1902, and expiring 1 July, 1907. Among the books to be furnished by Ginn & Co. under that contract is a work called Hezen's Graded Speller. As required by section 57a VI, before the expiration of the contract the school board met to select books to be used for the five years succeeding the

expiration of the contract. By a vote of six members. a book called Farr's Physical Geography was adopted in place of Appleton's Physical Geography, which was then in use. Next the board, by a vote of only five members, adopted a book called Hunt's Progressive Speller in place of Hezen's Graded Speller. Ginn & Co. offered to renew their said contract for the succeeding five years; but the school board refused to renew the contract; and Ginn & Co. ask of this Court a *mandamus* to compel the school board to do so. A *mandamus nisi* has been awarded, and the school board has entered a motion to quash it.

Under such motion to quash the question arises, Does the *mandamus nisi* show good ground for a *mandamus?* Section 57a VI, chapter 45, says, "It shall be the duty of the board to meet at least three months before the expiration of any such contract, and adopt one text book, or a series of text books on each subject contracted for." It is argued that this imposes a "duty" to adopt books. So it does. That is, a duty to adopt the books to be used, but not a duty to select any particular publisher. Section 57a VII says that "no book or series of books already contracted for under the act shall be changed for another or different book or series except by the affirmative vote of five members of the board. * * * * And not more than one book or one series of books on one subject shall be changed in any one year, except by the affirmative vote of six members." It is argued that as one book was changed by a vote of six members, the other, changing Hezen's Speller, by only five, the latter change is utterly void, and is no change at all, and that it was the duty of the board to renew the old contract for furnishing Hezen's Speller, just as if no change at all had been made, and *mandamus* lies to enforce the duty. Waiving the question whether the language means that when one book has been changed only the additional changes must have six votes, say that the board could not make a second change by five votes. The question then comes, has a book publisher any right to compel the renewal of his contract? A plaintiff in the action of *mandamus* must, as in other cases, have a vested legal right to be enforced. An alternative *mandamus* is a declaration, and must show title. *Fisher* v. *Charleston*, 17

W. Va. 596; *State* v. *County Court*, 47 *Id.* 672; *Milliner* v. *Harrison*, 32 Grat. 422: 19 Am. & Eng. Ency. L. 725. Now, Ginn & Company's contract was at an end. The board, as a party capable of contracting, had a right to refuse to contract again with Ginn and Co., unless the statute confers on them a vested right to have that contract made for their benefit. Was it the purpose of the statute to confer on book publishers a *right* to have a renewal of a contract under such circumstances? Or, was it the purpose to provide only for the public interest? We think the latter was the object of the law makers. When the statute says no change of books shall be made except by a vote of six, it means, as it says, no change of *books*, and does not prohibit a change of *contractors*. In section 57*a* VIII, it is provided that "after the adoption of any text books the board shall contract with the publishers proposing the same." We think that it is not the purpose of this clause to bind the board to contract with any particular publisher, but that its only aim is to say that after selection the board shall make a contract to guarantee a supply of books, and that a contract of certain character defined in that section. Its second object is to cautiously provide the terms of the contract in the interest of the people. This is why this clause was inserted. It is entirely reasonable to say that among many provisions for obtaining books, · giving minute details of procedure, there should and would be a direction to make a contract; but that is the only design of the clause quoted. Its design is not to give any particular publisher a legal right to a contract. Suppose several publishers propose the same books. Cannot the board select the one to be contracted with? Section 57*a* IV, says that in the selection of books the board must "procure the best possible terms for exchange and introduction and for the regular supply of the books for a term of five years." Section 57*a* III says the board must have reference to books and terms in selection. This speaks a discretion in the board of selection of publishers. Suppose no change in books. Must the board continue to contract with the same publishers? How long? This would give such publisher a monopoly, whereas the public interest would require that a construction be given the statute which would vest in this

important board a discretion as to the publishers. The public interest is uppermost. The construction contended for by Ginn & Co. would demand a renewal of the contract at the same prices, though others might offer lower prices. The provision requiring six votes for more than one change of books was to prevent frequent and extensive changes entailing on the public outlay for new books; and its object was not to subserve the ends of the publishers, but solely in the interest of the public. The school board has, and ought to have, a right to contract with any publisher it may choose. The statute does not compel the publisher to contract. The board has no hold on the publisher until after a contract; nor has he any hold on the board until after a contract is consummated. The statute makes no promise to the publisher to contract. Where is the mutuality of the obligation on both parties? Where the clause denying the board power to choose the publisher? It requires clear words to do this. "A bidder on proposal issued by the city for estimates acquires no legal right or cause of action to enforce which a *mandamus* will be issued, until the contract has been made with him." *People* v. *Croton Aqueduct*, 26 Barb. 240.

"To entitle a party to this remedy, there must be a clear legal right. Accordingly, a bidder on proposals for estimates has no ground for a *mandamus*, as he has no cause of action, and no clear legal right until a contract is made with him and approved by the common council." Spelling on Extraordinary Remedies, section 1441.

In *Welsh* v. *Board of Supervisors*, 23 Iowa 199, the court says on page 204: "Now suppose plaintiff's was the only newspaper of the county, could he by *mandamus* compel the treasurer, sheriff and all executors to make the required publications in his columns? There can be but one answer to such an inquiry. These officers might be guilty of a very great neglect of duty, might be responsible in damages to one aggrieved by such neglect; they might suffer in public estimation and be held responsible before the people, but the plaintiff would have no such interest or right in the exercise of these duties as to compel publication." In *State* v. *Fon Du Lac*, 24 Wis. 683, it is said: "But without deciding upon this point, we think the appli-

cation was properly denied for the reason that where proposals are made and bids put in, in the usual manner in letting contracts for public works, the lowest bidder has no such fixed absolute right that he is entitled to a *mandamus* to compel the letting of a contract to him after his bid has been in fact rejected and the contract awarded to another. The statutory provision requiring the contract in such cases to be let to the lowest bidder is designed for the benefit and protection of the public, and not for the bidder. And whatever remedy the public may have the lowest bidder whose bid has been rejected, has no absolute right to a writ compelling the execution of a contract with him, after one has in fact been let to another.''

We do not discuss the question of how far *mandamus* lies, as a general rule, to enforce the *making* of a contract, because we think that the case hangs on the statute. If it be construed to vest a right in Ginn & Co. to have the existing contract prolonged for five years, *mandamus* might lie, but clearly if it does not confer such right, they cannot maintain the writ.

We dismiss the alternative writ, and refuse a peremptory *mandamus*.

*Writ Denied.*

POFFENBARGER, JUDGE, (*concurring:*)

I concur in the refusal of the writ, but I do so on the ground that the book in question has been legally displaced, not that the publisher would have no right of renewal of the contract, if it had not been so displaced. In my opinion, the hypothesis of the alternative writ, namely, that the book has not been legally displaced, is unsustained, and what the plaintiff's status would be, if it had been, I do not feel called upon to say. However, I doubt the want of legal right to renewal when a book has not been displaced, and no publisher, other than the one with whom it was contracted, can furnish it, and the use of a text book on the subject of which the book treats has not been dispensed with. He contracted under a statute saying there should be no displacement of his book, except in a prescribed manner, which implies that the use thereof shall continue, if any book on the subject is used, and that, if no other person

can furnish the book, he may do so.    Does this not impliedly say the contract carried with it, as a part thereof, an option of renewal, analogous to a privilege of purchase as part of a contract of lease?    The public is fully protected by the power of the board to displace the book,. if the price is exorbitant, or there is any other cause for getting rid of the contractor.

But, as I have said, this book was legally displaced.    Only two changes were made, one by five votes and the other by six.    It is immaterial that the six vote change was made first.    It does violence to the mere letter of the statute but not to its meaning and spirit.    Having the power to make one change by five votes and another by six, the order of time in which the changes are made cannot possibly signify anything in a practical sense.    Had the vote, respecting plaintiff's book, been taken first, it would have been displaced, and on the next vote, the other would have gone out by six votes, in strict conformity with the letter of the statute.    To say that, because the order of voting on the two propositions was reversed, only one change of books was effected, is to limit the powers of the board by nothing more than a mere dry technicality.