# CHARLESTON.

## BUTLER v. PRINTING COMMISSIONERS.

Submitted January 12, 1911.   Decided January 17, 1911.

1.  MANDAMUS—*State Officers—Discretion.*
    A: *mandamus* will not go to a bidder for state binding to compel the Commissioners of printing to award him the contract for such binding after they have awarded it to.another bidder, though the former was the lower bidder, the function of the board of commissioners involving discretion.

2.  QUAERE.
    Is this a suit against the State?

Petition of S. C. Butler for writ of *mandamus* against J. S. Darst, Auditor, and others.

*Writ Refused.*

*Price, Smith, Spilman & Clay,* for petitioner.

*William G. Conley,* Attorney General, and *Frank Lively,* Assistant Attorney General, for respondents Darst and others.

*Mollohan, McClintic & Mathews,* for respondent Guthrie.

BRANNON, JUDGE:

S. C. Butler and W. H. Guthrie filed with the Commissioners of Public Printing, composed of J. S. Darst, State Auditor, E. L. Long, State Treasurer, and M. P. Shawkey, State Superintendent of Schools, competing proposals for doing the public binding, under chapter 16, Code 1906.   The board of commissioners awarded the contract for binding to Guthrie, who gave bond as required by the statute, and the award of the contract was approved by the governor, under section 10, and the contract was filed in the auditor's office, the place for its deposit fixed by that section.   Section 5   prescribes that the commissioners shall award the contract "to the lowest responsible bidder," and after the contract had been awarded to Guthrie, Butler discovered that his bid was lower than Guthrie's, arising from Guthrie's extending into the total column of his bid certain erroneous sums to which certain items of work would amount charged at the same rate in both bids.   Then Butler asked the

commissioners of printing to recall their award of the contract to Guthrie, and to award it to Butler; but the commissioners being of opinion that the matter had passed out of their control declined to do so; and now Butler asks of this Court a *mandamus* to compel the commissioners to award him the contract for the state binding.

The Constitution requires the Legislature to provide by law that fuel, stationery, paper, binding, and printing shall be let by contract "to the lowest responsible bidder." Art. VI., section 34. Under that section the Legislature has enacted chapter 16 of the Code of 1906, making the state auditor, treasurer, and superintendent of schools a board or commission to publish notice for proposals or bids for furnishing the articles and materials and doing the work specified in the statute, and vesting in that board full, ample and complete power to pass on all such bids, giving them all power over the business, subject only to the action of the governer. Our constitution and fabric of government divide governmental powers into three grand divisions, and prohibit the assumption by those exercising the powers of one of them of the just powers of another. This is a cardinal principle, a distinguished feature of our free government, always to be kept in mind; a great light which is always to be thought of in such cases as the present. The functions of the Commissioners are very important in public administration, and are an essential part of the executive department. The judiciary must be very cautions when it interferes with the functions of the executive department. It was said by able men in an early period of our country's history that the courts were usurpatory of power, and inclined to dominate over other branches of government. The courts should not justify this charge. It does seem that the constitution and statute intend and mean to invest the matter before us exclusively with this executive board erected by the Legislature, under the mandate of the Constitution to deal with it. It is executive or political action, not judicially reviewable. It would seem that it was never intended that such matters should in anywise fall under the supervision of the courts, and be the subject of private litigation. If so the public wheels might be impeded. The Legislature might meet and find its supplies for business involved in a law suit. So with the public

offices. Where would be the end of delay and confusion? The character of the transaction or business repels that construction of the law. I do not say that under no circumstances can courts affect the action of executive officers where void of discretion, and only ministerial; but I do say that in this matter they can not do so; I do say that where with an executive commission of the character involved in this case there is lodged judgment and discretion, a court cannot control it by *mandamus;* and we hold that this board is vested with discretion in passing on such bids. It is said in Merril on Mandamus, sec. 117, that the writ will go to compel public officers to let contracts to the lowest bidder, but not when vested with discretion. This is only the general rule that it will not go to control discretion. But it is urged upon us that the law says that the contract must be given to the lowest bidder, without any discretion in the printing commission, if he is pecuniarily responsible. This cannot be sustained. In *Douglass v. Commonwealth,* 108 Pa. 599, an act directing contracts for supplies to be awarded "to the lowest responsible bidder," and it was held that the word "responsible" does not refer to pecuniary ability only, that the act called for "the exercise of discretionary powers on the part of the city, and if they act in good faith, though erroneously or indiscreetly, *mandamus* will not lie to compel them to change their decision." *State* v. *McGrath,* 91 Mo. 386, holds that "the duties of officers entrusted with the letting of contracts for public work to the lowest responsible bidder are not of a strictly ministerial nature, but involve the exercise of such a degree of official discretion as to place them beyond the control of the courts by *mandamus.*" It held that *mandamus* should not go to compel the commissioners of public printing to award the contract to one on the ground that he was the lowest bidder. This principle is supported by 26 L. R. 710; Page on Contracts, vol 2, p. 1638; *State* v. *Hemmen,* 63 Ohio St. 440; *Mills* v. *Larrabee,* 78 Iowa 97; *People* v. *Kent,* 160 Ill. 655-662; *State* v. *Rickards,* 16 Mont. 145, (strong case).

A bidder might be worth thousands, and yet be dissipated, negligent, dilatory or dishonest, and therefore not responsible. There is no such imputation against Butler; but I speak of the character of the official functions as discretionary, and therefore *mandamus* does not lie.

In *State* v. *Board,* 24 Wis. 683, it was held that where the

law said the contract should go to the lowest bidder, after his bid had been rejected and the contract let to another, he had no right to a *mandamus* to compel the execution of the contract to him.   The Maryland case, *Pavement Co.* v. *Mahool,* 110 Md. 397, holds that the better doctrine in all cases of this nature, and supported by "an almost uniform current of authority" that duties of officers entrusted with "letting of contracts for public improvements to the lowest bidder are not duties strictly of ministerial nature, but involve the exercise of such a degree of official discretion as to place them beyond the control of courts by *mandamus.*"   It says the courts will not control such officers in absence of fraud or collusion.   See 28 Cyc. 663; 20 Ency. L. 1169.

Butler goes on the theory that the statute confers on him a right calling for *mandamus;* but I find it laid down in Page on Contracts, section 1049, that "such statutes are intended for the benefit and protection of the public, rather than that of the bidders   *   *   *   and they confer no absolute right upon a bidder."   This rule seems well supported as denying *mandamus. State* v. *Eaves,* 28 L. R. A. 298 (50 Am. St. R. 476).   In High, Extra. L. Rem., sec. 92, it is laid down that duties of letting to the lowest bidder for public work is not a ministerial duty, "but involves the exercise of such a degree of official discretion as to place them beyond control of the courts by *mandamus.* And the true theory of all statutes requiring the letting of such contracts to the lowest bidder is, that they are designed for the benefit and protection of the public, rather than that for bidders, and that they confer no absolute right upon a bidder to enforce the letting of the contract by *mandamus* after it has been already awarded to another."   The case of *Ginn & Co.* v. *School Book Board,* 62 W. Va. 428, holds that the school board cannot be compelled by *mandamus* to renew a contract for another period.   Its principle and cases it cites will sustain the position that the statute involved in this case was not made for the benefit of the bidder, and confers upon him no *title* or *right* enforceable by *mandamus,* and moreover that the printing board has discretion so as not to be subject to *mandamus.*   It makes no difference that the pecuniary responsibility of Butler was not and is not questioned.   It does not change the cast of the function of the board; it does not take away their discretion.

The defendants say that whilst Butler's bid was the lowest for binding taken as a whole for that and printing and stationery it was not lower, and that they could not say, even if they had known the mistake, they would have let the binding contract to Butler, as they might have deemed it best to deal with one bidder for all. Certainly this was in their discretion.

Another question has suggested itself. The contract was complete, and as a *mandamus* does not go to reverse a completed act, it does not here lie, unless we can regard the action of the board void as if without jurisdiction; but as it had clear jurisdiction over the matter, it would be rash to say that its act is void.

The question is made by counsel whether an additional reason against awarding the writ is not found in the claim that the suit is against the State and therefore prohibited by the Constitution. We do not decide this point. It may be said no liability is sought to be imposed upon the state, nor is her property affected; yet her officers are sued only because they are such, and having no personal interest, and the law is that the prohibition of suit against the state cannot be evaded by circuitous action in making the officers parties. This suit is to establish a contract imposing liability on the state, which it would recognize, though no suit could be brought on that contract. A *mandamus* for relief in such a case as this was held a suit against the state in *Mills Pub. Co.* v. *Larrabee,* 78 Iowa 97. See *Miller* v. *Board,* 46 W. Va. 192.

The case of *Dillon* v. *Bare and Carter,* 60 W. Va. 483, will not justify *mandamus* in this case. There it was held that the officer had shirked his duty, made a false and fraudulent valuation, no performance of duty at all. Besides, there a public officer representing the interest of the state sought to have a public officer execute a law requiring assessment of taxes, a law for the sole benefit of the state; whereas here is an individual seeking to enforce an act made to further state interest, not an individual's.

We refuse the *mandamus.*                    *Writ Refused.*

POFFENBARGER, JUDGE, *(dissenting):*

As this case involves the construction of an important statute and definition of the functions of the writ of *mandamus,* and

the views and conclusions, expressed by my associates, and their application of the law, are not in accord with what I deem the best considered cases, I am compelled to dissent. The determination of the responsibility of the bidder undoubtedly involves the exercise of discretion, and, if that element were in the case, it would deny remedy by *mandamus,* provided the respondents had exercised their discretion. But no such question is involved. The return virtually admits the award was made as it was, because Guthrie appeared to be the lowest bidder for the binding. The alternative writ unequivocally asserts the responsibility of Butler in all respects and the return does not deny it. By a mere oversight, failure to scrutinize the figures in the Guthrie bid and test the correctness of the calculation, the relator was refused an award to which he was clearly entitled. After the discovery of the mistake, the commissioners thought they had no power to correct it, and their opinion and judgment as to that question may be correct. There is no suggestion of intentional wrong on their part, and I am satisfied none existed on the part of any of them.

There are a few cases in which it has been held that statutes like this one were made for the benefit of the public and, therefore, vest irreviewable discretion in the officers, charged with their administration. I agree that they are intended to subserve the public interest, but I do not agree that this is accomplished, if they are to be construed as having vested unlimited power in the officers. Such a construction defeats that purpose. The public interests are best secured and protected by the enforcement of the rule of conduct, found in the terms of the statute. While the respondents here have acted honestly in the matter, the commission may not always be composed of men who will do that, and this decision leaves it in the power of the commissioners of printing, at any time in the future, to award the contract as they please, if they shall chance to be men not altogether scrupulous. It may be truly said, that such an event is not likely to happen, but a statute ought to be so construed as to provide against possible, as well as probable, injury to the public interest. It is perfectly logical and consistent to say that the framers of the constitution and the statute intended to vest in the bidder a right which the law would vindicate by compelling the commissioners to award him a contract, if he

should become clearly entitled to it, as a means of subserving the public interests. They undoubtedly regard the process of bidding as a means to that end, and I have no doubt that they intended the bidder to have some protection by way of inducement to him to bid. They may well have thought that, if bidders were to be wholly at the mercy of the commissioners, they might refrain from bidding. It seems to me this is a most reasonable and logical interpretation of the constitutional and legislative purpose. Therefore, I am unwilling to yield assent to the view, that such statutes are intended for the benefit of the public only, in the direct and immediate sense, and not for the benefit of the bidder at all. In the remote and substantial sense, it is intended for the benefit of the public, but, in the direct and immediate sense, it is intended for the benefit of the bidder as a means of promoting the public interest. The construction my associates have adopted will enable commissioners to make it promote personal or partisan interests, if they choose to do so.

The majority opinion does not say the statute is merely directory, but it really makes it so. It is mandatory in form, and the recognition of the right of the lowest bidder by the award of the contract to him, no question of responsibility being involved, is the essence of the function required of the commissioners. It is the very heart and soul of the statute. Without that restraint upon their powers, they may do what they please and the purpose of the statute will be wholly defeated, if they should be so disregardful of the public interest as to favor a particular bidder, by reason of some improper motive, such as fear or favor.

By far the greater number of cases in which this writ has been refused included something other than the relative amounts of the bids. In other words, the question of responsibility or fitness of the bidder, or compliance with some of the conditions, laid down for observance by the bidders, was involved. The whole law of the subject is carefully reviewed in *State* v. *Rickards,* 16 Mont. 145, cited in the majority opinion. That case holds that the respondents had discretionary power and that their decision upon the facts could not be reviewed. The printing required, under the contract, had to be done within a limited time and the question upon which the decision of the

commisioners seems to have turned was, whether the relator gave sufficient guaranties of his ability to do the work within that time. In its opinion, the court, discussing the conduct of the relators, in respect to this phase of the case, said: "It appears that they considered all the facts and information which they could · reasonably be expected to obtain, and that they acted wisely and discreetly, and not arbitrarily and wrongfully upon the information before them." The reported decisions present a great variety of facts. In some instances, the respondents refused to make the award because of insufficiency, in form or substance, of the security offered; in others, because of the unfitness or irresponsibility of the bidder; and, in others, because, under the law, they had the right to reject any or all bids. In all these instances, stress was laid by the court upon the discretionary power of the officers. In the general declaration of law, found in the syllabi, they did not in all cases say that the discretion exercised related to matters of this kind. These decisions are not to be taken as allowing discretion when no element of that sort is involved. There are many cases in which the jurisdiction by the writ of *mandamus* has been declared, when there was no such element involved. The writ was actually awarded to the lowest bidder in *Boren* v. *Commissioners,* 21 O. St. 311, *State* v. *Commissioners,* 39 O. St. 188, and *People* v. *Contracting Board,* 46 Barb. 254. Though refused in · the following cases, the same principle was asserted, the refusal being based upon non-compliance with conditions on the part of the bidder: *State* v. *Board of Commissioners,* 26 O. St. 531; *State* v. *Barnes,* 35 O. St. 136; *State* v. *Printing Commissioners,* 18 O. St. 386; *American Clock Co.* v. *Commissioners,* 31 O. St. 415; and *People* v. *Buffalo County,* 4 Neb. 150. In the last named case, it was refused because the commissioners, attempting to let the work, had omitted essential proceedings and so deprived themselves of the power to refuse bids or make a contract at the time and place of the alleged letting. *State* v. *Herrman & Others,* 66 O. St. 440, overruling former Ohio decisions without mentioning them, sustains the position taken in the majority opinion here. However, as the statement and opinion are very brief, they may not disclose all the facts. At any rate, it is a very unsatisfactory opinion. It is predicated on the holding in *State* v.

*Commissioners,* 36 O. St. 326, asserting uncontrollable discretion in the letting officers, but it does not mention the later case in 39 O. St., above cited, in which, under the same statute, the writ was awarded, upon mature consideration, out of which a well considered opinion was evolved. The case in 36 O. St. seems to have involved collusion among bidders to overreach the commissioners. Unlimited discretion in the commissioners is not necessary to the control of situations of that kind. The evidence of fraud and conspiracy on the part of the bidders, when it exists, is a circumstance, calling for a re-letting, under the construction I give the statute.

But discretion in the commissioners, extending to all phases of their work would not necessarily bar the remedy invoked. Officers exercising the discretionary powers cannot act arbitrarily. Reason must govern their action. They cannot say a clearly responsible man is irresponsible, or that a bidder has not complied with conditions, when he obviously has. Neither ignorance, a fanciful, groundless notion as to law, nor fraud will be permitted to bar the writ. The suggestion that only collusion or fraud will do so is too narrow. The authorities go beyond that. Judgment as well as honesty must be put into effect. *Dillon* v. *Bare & Carter,* 60 W. Va. 483; *Glencoe* v. *People,* 78 Ill. 382; *State* v *School Directors,* 134 Mo. 296; *State* v *Kellogg,* 95 Wis. 672; *State* v. *Johnson,* 103 Wis. 591; *Briggs* v. *Hawkins,* 16 R. L. 83; *Sparrow's Petition,* 138 Pa. St. 116; *Brewing Company's Petition,* 127 Pa. St. 523; *Dental Examiner* v. *People,* 123 Ill. 227. This principle has been enforced on applications for the writ by bidders, entitled to awards. *State* v. *Commissioners,* 39 O. St. 188; *People* v. *Contracting Board,* 46 Barb. 254. In the former case, the commissioners rejected the lowest bid on the theory of irresponsibility of the bidder. The court said: "We are satisfied from the evidence, after carefully considering it, that the commissioners acted in good faith, under the mistaken advice and belief that ample discretion was vested in them to reject the bid of the relator, upon the information which they had. We are equally satisfied, that, whether any discretion is vested in them or not, they acted upon insufficient information, and to some extent incorrect information, and that they offered the relator no opportunity to put them in possession of the real facts, before

deciding against awarding him the contract. We must assume that if the commissioners, when the charges were made against Mitchell, had given him a hearing, he would have satisfied them, as he has us, that there was, in fact, no reason why this contract should not be awarded to him." In the latter, it was rejected for alleged non-compliance with the condition as to security, and there the court said: "We must assume that the defendants put their refusal to grant the contract to Vickerman solely on the ground that his certificate of deposit did not conform to that required by the notice. That it did so conform in substance, if not absolute in form, and gave to the defendants the whole benefit of the deposit, equally as if it had been in every respect formal. That such being the case, there was no *discretion* left in the board to award to the relator the contract. He was entitled to it as matter of right and of law."

Neither is the writ barred by complete action by the commissioners. The authorities are almost uniform to this effect, only an occasional case to the contrary being found. Take all our election cases, in which boards of canvassers and other tribunals have been compelled to go back and legally and correctly do what they had improperly done. Take also the New York and Ohio decisions, just analyzed, and all the other cases, here cited, for the proposition that abuse of discretion will be controlled by *mandamus*. In *Dillon* v. *Bare & Carter*, every member of this Court said the fact that the assessors had completed their work of valuation did not bar the writ. Three refused it on the ground that they had not acted arbitrarily, and the other two, thinking they had, voted to grant the writ.

Nor do I think there is anything in the suggestion that *Dillon* v. *Bare & Carter* can be distinguished by reason of the status of the relator. I have already cited numerous cases in which the relators were private persons.

This is not a suit against the state. Neither the awarding of this contract nor its execution will bind the state to pay anything. It is entirely optional with the legislature to pay for the printing and binding, after it shall have been done, or not. The statute contemplates such an appropriation. By making it, the legislature will set aside the fund for the purpose, and consent that those entitled to it may have remedies against the administrative officers to obtain it. The respondents are not proceeded

against as heads of executive departments. Here they constitute a mere board, charged with an administrative function.