**17 P.(2d) 939**

**DOYAL v. WALDROP et al.**
No. 3774.

Supreme Court of New Mexico.
Oct. 24, 1932.

J. C. Gilbert and O. E. Little, both of Roswell, for appellant.

Judson G. Osburn, of Roswell, and James N. Bujac, of Carlsbad, for appellee Chaves County Board of Education.

L. O. Fullen, of Roswell, for appellees Waldrop and Williams.

BICKLEY, C. J.

The county board of education of Chaves county advertised for sealed competitive bids to operate school busses for the purpose of conveying children to the public schools and returning them to their respective homes in route 19A and 19B, respectively, of school district No. 19.

There were four bidders. The plaintiff, Doyal, put in the lowest bid for route 19A, to wit, $900; the defendant Williams' bid was $1,125, and to him was awarded the contract.

As to route 19B, Mr. Helmstetler bid $752.40 and the defendant Waldrop placed his bid at $1,112.40 and to him was awarded the contract.

The complaint alleges: "That one of the provisions of the laws of the state of New Mexico relative to letting said contracts, is that said contract shall be let to the lowest responsible bidder." It is further alleged that the plaintiff Doyal and said Helmstetler were each responsible and fit and proper persons to drive said school busses for the purpose of transporting said children to and from school and were physically fit and financially able to carry out the proposed contract. It is also alleged that the board willfully and unlawfully rejected the bids of said Doyal and Helmstetler and accepted the bids of the defendants Williams and Waldrop. There is no allegation that the successful bidders were in any manner unfit, and no allegations of fact showing any motives or reasons for favoritism toward the successful bidders.

It was sought to invoke the equity jurisdiction of the trial court for an injunction prohibitive and mandatory to the effect that the contracts entered into with Williams and Waldrop be canceled and that the board award contracts to Doyal and Helmstetler, respectively, or to other fit and proper persons. Answers were filed denying the allegations of the complaint. When the matter came on for hearing, the defendants demurred upon the ground that the complaint does not state a cause of action for the reason that it was not therein alleged that the

board in awarding the contracts had grossly abused its discretion or that there existed fraud or collusion between the board and the successful bidders. The trial court sustained the demurrer and dismissed the complaint and rendered judgment against the plaintiff.

 The appellant here asserts, as in the trial court, that contracts of the nature involved are required by our statutory law to be let to the "lowest responsible bidders," and invokes historically section 4893, Code 1915, which was as follows: "No expenditure involving an amount greater than two hundred dollars, shall be made except in accordance with the provisions of a written contract, and no contract involving an expenditure of more than five hundred dollars, for the purpose of erecting any public buildings or making any improvements, shall be made except upon sealed proposals, and to the lowest responsible bidder."

Appellees contend that though such may have been the law under section 4893, said section has been expressly repealed, and that such matters are now controlled by section 804, chapter 148, Laws 1923, as amended by section 12, chapter 73, Laws 1925 (section 120-804, Comp. 1929), which is as follows: "Except with respect to independent and union high school districts, the county board of education shall have supervision and control of all rural schools and districts, and of sites, buildings, equipment and funds of said districts, with the power to employ and discharge all teachers and all school employees of said schools, subject to the limitations here-in otherwise provided; Provided, that the county board of education may, in its discretion, delegate to the county school superintendent the power to employ and discharge all teachers and school employees. Contracts involving the expenditure of more than two hundred dollars shall be in writing. Contracts involving the expenditure of five hundred dollars or more, shall be in writing, and upon sealed competitive bids, after notice and advertisement of such bids shall have been published once a week for four consecutive weeks in some legal newspaper of general circulation in the county; Provided notices and advertisement shall not apply to teachers' salaries. When plans and specifications for the erection of school buildings shall have been changed, altered or revised after advertisement of bids for the construction thereof, the governing boards shall be required to re-advertise for new bids, provided that it shall not be necessary to re-advertise for bids to cover minor alterations or changes in plans required to correct errors or omissions in the original specifications."

In view of the fact that section 4893, Code 1915, dealt with contracts for the purpose of erecting public buildings or making improvements to property, and considering the language employed by section 804, chapter 148, Laws 1923, as amended, it might be contended that the later enactment is amendatory or a substitute for the earlier one and has application to building contracts and not to the character of contracts involved in the case at bar. However, no such question is here presented or argued, and we will not pursue it.

The parties assuming that the later enactment applies to the case at bar, we will so assume. Appellant contends that the requirement of the later statute that certain contracts "shall be in writing, and upon sealed competitive bids, after notice," etc., is the equivalent of the legislative mandate in section 4893, Code 1915, that the contract shall be let "to the lowest responsible bidder." We think appellant is mistaken. In Mayes v. Bassett, 17 N. M. 193, 125 P. 609, 613, we said that section 4893, Code 1915, required competitive bidding based upon plans and specifications upon reasonable public notice. There was no ambiguity in the direction that the school authorities were to award contracts for erection of public buildings to the lowest responsible bidder. The court was dealing with something in addition to that, to wit, the necessary implication that there must be a public notice containing "a common standard by which to measure the respective bids, which should be prepared and upon which the bids must be based." This view of the meaning of the phrase "competitive bids" finds support in Leininger v. Ward, 126 Okl. 114, 258 P. 863, deciding: "The term 'competitive bidding' means bidding upon the same undertaking, upon the same material items in the subject-matter, upon the same thing."

This view is reflected in Donnelly on the Law of Public Contracts, discussing the necessity for plans and specifications, where it is said: "To permit each bidder to propose his plans and specifications not only prevents competition but opens the door to favoritism and wipes out the standard by which the public body may determine who is the lowest bidder." See paragraph 113. In Elliott on Contracts, discussing bidding, it is said at section 3636: "Where the purpose is to construct a public work, the statutes in most, if not all the states, require that the bids therefor shall be competitive, and in some, that the lowest and best bid shall be accepted." We find no definitions according to the phrase the meaning contended for by appellant.

The act of 1923 as amended calls for a "common standard by which to measure the respective bids," by using the phrase "competitive bids," and it describes what the Legislature regarded as "reasonable public notice" the absence of which requirements had been the source of perplexity resulting in Mayes v. Bassett supra. While dealing with the subject, the 1923 and 1925 Legislatures saw fit to leave out the requirement that the contract should be let "to the lowest responsible bidder." This change of language and the omission is significant and indicates that the clear intention of the Legislature was to repose in the school board a discretion subject only to the "limitations" mentioned in the enactment. A similar change in the terms of a statute was considered in Board of Com'rs of Harper County v. State, 47 Kan. 283, 27 P. 997, 998, where the court said: "As we have seen, up to 1872 the statute required that the county printing should be let to the lowest responsible bidder. It was then changed by striking out this proviso, so that the control was practically unlimited. * * * 'before 1872 they must, since they may, let to

the lowest bidder. * * * Taking away a restriction upon full discretion leaves the discretion full and free, and does not superimpose another restriction.' "

The letting of public contracts has been variously dealt with by Legislatures delegating powers to executive boards. Sometimes the enactments contain no limitations upon the exercise of the power. Under such circumstances, the widest discretion is enjoyed. This discretion is limited in various degrees by statutory provisions. For instance, where the direction is that the contract shall be let to the "lowest bidder" the discretion is slight. Where the legislative direction is that the contract shall be let to "the lowest responsible bidder," the function is regarded as judicial in character and the courts will not interfere unless there has been an abuse of discretion.

Under section 120-804, 1929 Comp., the only limitation upon the authority of the board is that competition shall be called for upon published notice of a common standard of measurement for bids. In the case at bar the board fully complied with the express provisions of the statute. There is no express requirement that the contract shall be let to the lowest responsible bidder. In a note to Butler v. Darst, 38 L. R. A. (N. S.) page 653, entitled "Discretion in choosing between bidders for public contract," various statutory limitations are discussed, and it is said: "Where there is no statutory limitation upon the power to award public contracts, the authorities have a broad discretion. The whole subject-matter is within their control, provid-

ed they do not actually exceed their power or invade private rights, and they are left to their sense of official duty and responsibility; but they must act with due fidelity to the public and for the interest of the public, in good faith, with reasonable and ordinary care and diligence, and without fraud, collusion, corruption, or palpable abuse of discretion."

Chapter 18 of Donnelly on the Law of Public Contracts treats of the letting and refers to the statutory requirements of advertising for bids. The author mentions statutes regulating the opening of bids, provisions that a bond or other security or cash shall accompany bids. The author then in the opening paragraph of the following chapter says: "If these statutes regulating competitive bidding do not provide that public authorities, after inviting proposals by public notice, shall accept the lowest proposal, it is clear that the intention of the legislature is that they shall make such contract as in their judgment the public interests require." Following are some illustrations and arguments drawn from the cases cited in support of the text:

In Mayo v. County of Hampden, 141 Mass. 74, 6 N. E. 757, 759, the court said: "County commissioners are not required by law to accept the lowest proposal for public works. Pub. St. c. 22, § 22, provides that all contracts for public works made by them shall, if exceeding $300 in amount, be made in writing, after notice for proposals therefor has been published at least three times in some newspaper published in the county, city, or town interested in the work. It does not provide that they shall accept the lowest proposal. It

is clearly the intention of the legislature that the county commissioners, after inviting competition by public notice, shall have the authority to make such contract as in their judgment the interests of the county require."

In Michigan a statute provided in case of certain street improvements the board of public works should advertise for proposals and require bidders to furnish security for the performance of proposals tendered; that the bids should be publicly opened, etc. The Supreme Court said in Kundinger v. City of Saginaw, 132 Mich. 395, 93 N. W. 914, 917:

"These are the strongest provisions of the charter in regard to letting contracts after advertising. Manifestly they do not require that contracts must be let to the lowest bidder. It is discretionary with the board, and when it acts in good faith its action is final.

"The method adopted by the defendants secured to the city competitive bids both upon plans and cost."

In Minneapolis the charter of the city of Minneapolis required that: "All contracts for the expenditure of $100 or more, public notice shall be given and proposals invited for the same in such manner as the council shall direct." In Elliot v. City of Minneapolis, 59 Minn. 111, 60 N. W. 1081, the court decided: "There is no provision in the city charter of the city of Minneapolis requiring contracts for the purchase of fuel to be awarded to the lowest bidder. Held, that the manner of awarding such contracts rests in the discretion of the city council, subject, however, to the rule of law that such power is not un-limited, and that if fraud enters into such contracts, or the council abuses its discretionary powers in making such awards, the contracts may be impeached therefor."

In Page v. Town of Gallup, 26 N. M. 239, 191 P. 460, 461, the court decided: "Where power to do an act is conferred upon a municipality in general terms without describing the mode of exercising it, the trustees have the discretion as to the manner in which the power shall be employed, and the courts will not interfere with this discretion. 1 Dillon on Municipal Corporations, § 242; McQuillin on Municipal Corporations, vol. 1, § 376. This rule prevails, of course, only where there is no fraud or collusion on the part of the officers charged with performance of the duty. The discretion which the officers are to exercise is an honest one, and so long as such officials are so acting the court has no power to interfere."

In Nohl v. Board of Education, 27 N. M. 232, 199 P. 373, 16 A. L. R. 1085, we decided: "A court of equity will not sit in review of the proceedings of subordinate, political, or municipal tribunals; and, where matters are left to the discretion of such bodies, the exercise of that discretion, in good faith, is conclusive, and will not, in the absence of fraud, be disturbed." The opinion states: "The expenditure of public funds raised by taxation or other methods for public purposes must necessarily be intrusted by the Legislature to the public agencies, and these agencies are required to exercise discretion and judgment in determining the purpose for which such money will be spent, within the limits of the au-

thority granted, and courts will not interfere unless there is a clear departure from the legislative authority. \* \* \* It is clear that the courts should not interfere with the discretion intrusted to boards of education under the statute, unless it plainly appears that there has been a gross abuse of such discretion."

In Oliver v. Board of Trustees of Town of Alamogordo, 35 N. M. 477, 1 P.(2d) 116, 117, we decided: "The decision of the governing body of a town or city on matters committed to its discretion will not be set aside or disturbed, in the absence of a showing of fraud or conduct so arbitrary as to be the equivalent of fraud." It was there decided that there was no allegation in the complaint which would have warranted the lower court in giving to the plaintiffs a hearing upon the wisdom of the town board's determination of discretionary matters.

So in the case at bar, there are no allegations in the complaint which show fraud or gross abuse of discretion. The allegation that the board proceeded "wilfully and unlawfully" is a mere statement of a conclusion and is insufficient. In the absence of appropriate allegations of facts showing that the board was motivated by corrupt influences, or were actuated by motives arising from personal interest or improper partiality toward the successful bidders, we do not regard the fact that these bids were higher than those of the plaintiff Doyal and the bidder Helmstetler is a sufficient showing to warrant the court in upsetting the action of the board, thus caus-

ing delay and confusion. The differences in the bids may be occasioned on account of perfectly legitimate reasons and such as would warrant the payment of the higher price.

"Where jurisdiction and authority is given a public board to exercise its discretion, and no facts appear showing an abuse thereof, it is not within the province of courts to review such discretion." People v. Nellis, 14 Cal. App. 250, 111 P. 631.

In the case of Butler v. Darst, supra, 68 W. Va. 493, 70 S. E. 119, 38 L. R. A. (N. S.) 653, the West Virginia Supreme Court of Appeals adverted to the evil consequences of interference by the courts with the action of executive officers and boards, and is well worth reading.

A second proposition is advanced by counsel for the plaintiff to the effect that the county board of education was in contempt of court at the time of the hearing and was therefore not entitled to be heard in any way at the trial. The proposition is based upon the fact that at the time of the awarding of the preliminary injunction in this case there was a court order entered providing that the money to be paid to the successful bidders should be paid into the office of the clerk of the district court, to be by her kept until final hearing in the case, and that the county board of education had failed to so make said deposit, thereby placing itself in contempt of the order of the court. There was a motion filed to commit the county board of education for contempt which the district court denied, holding that the order had been improvident-

ly made. The basis of this holding is not disclosed by the record, but we assume that it must have been based upon the fact that it was necessary for these successful contractors to be paid as they performed their services, and in that sense the order should not have been entered. We do not think that the county board of education, under these circumstances, was guilty of contempt of a character which should prevent them from being heard in the case. Upon the first application to commit them for contempt, the court held that they were not in contempt and therefore were entitled to be heard. This holding we deem to be correct.

It follows that the judgment of the district court should be affirmed and the cause remanded, and it is so ordered.

WATSON, SADLER, and HUDSPETH, JJ., concur.