2001-NMCA-106

35 P.3d 298

BRADBURY & STAMM CONSTRUC-
TION, a New Mexico corporation;
Jaynes Corporation, a New Mexico cor-
poration; Gerald Martin General Con-
tractor, a New Mexico corporation;
Brycon Corporation, a New Mexico cor-
poration; Jack B. Henderson Construc-
tion Co., a New Mexico corporation, Pe-
titioners–Appellees,

v.

BOARD OF COUNTY COMMISSIONERS
OF BERNALILLO COUNTY,
Respondent–Appellant,

and

Joe E. Woods, Inc., Intervenor.

No. 21,052.

Court of Appeals of New Mexico.

July 10, 2001.

294

Mickey Beisman, Albuquerque, NM, for Appellees.

William J. Darling, Margaret P. Armijo, Leslie K. Coyne, William J. Darling & Associates, P.A., Albuquerque, NM, for Appellant.

## OPINION

BOSSON, Chief Judge.

{1} Bernalillo County (the County) appeals the district court's decision that it must grant a preference to New Mexico contractors (the "resident preference") in selecting the low bidder for the County's new jail project. *See* NMSA 1978, § 13–4–2(E) (1997). The County argues that the New Mexico legislature granted the County sole discretion to determine when it is "practicable" to apply the resident preference, and in this case, the County decided that it was not. *See* NMSA 1978, § 13–4–1 (1984). The County also contends that the district court should not have addressed the resident preference issue because the resident contractor waived its right to appeal by failing to comply with administrative procedures regarding bid protests. We disagree with the County and hold that the resident preference formula set forth in Section 13–4–2(E) applies to all bids for public works contracts. Because Plaintiff Bradbury & Stamm substantially complied with administrative procedures, we affirm the decision of the district court.

## BACKGROUND

{2} Faced with a federal court order to reduce inmate overcrowding at the Bernalillo County Detention Center, the County decided to build a new jail. To save money, the County decided not to grant a resident preference to New Mexico contractors who bid on the project. According to statute, that preference would have given New Mexico contractors a bidding advantage by multiplying their bids by a factor of .95 before comparing them to the bids from out-of-state contractors. Section 13–4–2(E). Thus, a New Mexico contractor could have won the contract over an out-of-state contractor with the low bid, if the resident contractor's bid was within 5 percent of the low bid.

{3} The County's reasons for bypassing the resident preference were twofold. First, the resident preference would cost too much. The County felt it was in "grave danger" of exceeding the appropriated budget for the project, which was over $31 million. Second, the County estimated that the 5 percent resident preference would cost taxpayers over $1.5 million in extra expense if applied to a contract of that size. The County also reasoned that the resident preference would decrease the number of out-of-state contractors bidding on the project which, in turn, would decrease the incentive to bid competitively.

{4} When the bids were opened on October 4, 1999, the County determined that an Arizona company had entered the low bid. The Arizona company bid $25,032,000, and Bradbury & Stamm, a resident contractor, bid $25,232,134. Both bids were over $5 million below what the County had appropriated for the project. Because the percentage

difference between the bids was much less than 5 percent, Bradbury & Stamm would have won the contract if the resident preference had been applied.

{5} After a protest, the district court decided that the resident preference was mandatory for public works contracts and that the County did not have discretionary authority to waive the rule. The district court remanded the case to the County with instructions to apply the resident preference to the bids before awarding the contract.

{6} Instead of applying the resident preference to the bids, the County investigated and ruled on a second, unrelated protest against the Arizona contractor. The County determined that the second protest was meritorious, and disqualified the Arizona contractor which meant that the bid went to Bradbury & Stamm. The County then appealed the district court's decision, which we treated as a petition for writ of certiorari and granted. *Cf. Hyden v. N.M. Human Servs. Dep't,* 2000–NMCA–002, ¶¶ 11–13, 128 N.M. 423, 993 P.2d 740.

## DISCUSSION

{7} Resolution of this appeal requires deciding questions of mootness, statutory construction, and administrative procedure. We begin our discussion by addressing an outstanding appellate motion filed by Bradbury & Stamm, requesting that we dismiss the appeal on the ground of mootness.

### *Mootness*

{8} Although Bradbury & Stamm successfully litigated the resident preference issue in the district court, the County ignored the court order and awarded the contract to Bradbury & Stamm on the basis of the second protest. Thus, the resident preference was ultimately not an actual factor in awarding the contract, and we agree that there no longer appears to be an actual controversy between the parties regarding the resident preference statute. *See Snodgrass v. Tularosa Bd. of Educ.,* 74 N.M. 93, 95, 391 P.2d 323, 324 (1964) (declining to accept jurisdiction when deciding the case "would be academic and would determine no issues between the parties").

{9} The County admits that no specific controversy now exists regarding the jail contract, but argues that the outstanding order of the district court, entered while an actual controversy did exist, could have a preclusive effect on the County when faced with similar situations arising in future public works contracts. *See State ex rel. Blanchard v. City Comm'rs,* 106 N.M. 769, 770, 750 P.2d 469, 470 (Ct.App.1988); *see also Atchison, Topeka & Santa Fe Ry. Co. v. State Corp. Comm'n,* 79 N.M. 793, 794, 450 P.2d 431, 432 (1969) (observing if an "order appealed from has any vitality and may be given implementation, even temporarily, the case is not moot and is entitled to consideration"). The County also suggests that we vacate the district court's outstanding order to avoid any future effect upon the County. We decline the County's invitation to do so. As the above cases demonstrate, New Mexico courts are inclined to resolve viable, outstanding orders on their merits, rather than dismiss a case as moot and vacate a lower court order.

{10} The County also asserts that the issues before us are of substantial public importance and, as such, should be excepted from the doctrine of mootness. *See City of Las Cruces v. El Paso Elec. Co.,* 1998–NMSC–006, ¶ 18, 124 N.M. 640, 954 P.2d 72 (observing that the Court will make an exception to the mootness rule if "an issue of substantial public interest is presented"); *Riesenecker v. Arkansas Best Freight Sys.,* 110 N.M. 451, 453, 796 P.2d 1147, 1149 (Ct. App.1990) ("[E]ven when events have mooted the dispute between the parties, New Mexico courts possess discretion whether to proceed to decide appellate issues that are matters of substantial public interest.").

{11} We note that this dispute is not unique to the County. It involves all governmental entities and their competing legal obligations to resident New Mexico contractors and to the public at large. Thus, this dispute potentially has a far-ranging impact on public finance and public administration. *See Mowrer v. Rusk,* 95 N.M. 48, 51, 618 P.2d 886, 889 (1980) (listing criteria to consider in determining " 'he requisite degree of public interest' " (quoting *People v. Labrenz,* 411 Ill. 618, 104 N.E.2d 769, 772 (1952))).

{12} For these reasons, we find the County's argument persuasive. The issue on appeal is of substantial importance to the public. If the County is correct that it has discretionary authority to protect its taxpayers from unnecessary expenditure, then the County and other governmental entities similarly situated could effectively eliminate the resident preference whenever it might be economically desirable to do so. Because this issue may well reoccur, it invites " 'authoritative determination for the future guidance of public officers.' " *Id.* (quoting *Labrenz*, 104 N.E.2d at 772). As our precedent guides us to "continue a cause" when these conditions are fulfilled, *Mowrer*, 95 N.M. at 51, 618 P.2d at 889, we deny all motions to dismiss and proceed to decide the appeal.

### *The Relationship Between Section 13–4–1 and Section 13–4–2*

■ {13} At the heart of this appeal lies a dispute about the interplay between Section 13–4–1 and Section 13–4–2, two statutes detailing how governmental entities are to award public works contracts. As stated in Section 13–4–1, "[i]t is the duty of every office, department, institution, board, commission or other governing body or officer thereof of this state or of any political subdivision thereof to award all contracts for the construction of public works ... to a resident contractor *whenever practicable*." (Emphasis added.) Juxtaposed with that law is Section 13–4–2, which first defines a resident contractor and then in subsection (E) states:

When bids are received only from nonresident contractors and resident contractors and the lowest responsible bid is from a nonresident contractor, *the contract shall be awarded to the resident contractor* whose bid is nearest to the bid price of the otherwise low nonresident contractor *if the bid price of the resident contractor is made lower than the bid price of the nonresident contractor when multiplied by a factor of .95.*

*(Emphasis added.)*

{14} The County contends that the language "whenever practicable" in Section 13–4–1 grants the County discretionary authority to determine practicability regardless of

the formula in Section 13–4–2. *See* N.M. Att'y Gen. Op. 65–05 (1965). According to the County, Section 13–4–2(E) comes into play only if it first determines that the resident preference is practicable. Without such a reading of the statutes, the County argues that the "whenever practicable" language of Section 13–4–1 would be rendered meaningless. *See Regents of Univ. of N.M. v. Fed'n of Teachers*, 1998–NMSC–020, ¶ 28, 125 N.M. 401, 962 P.2d 1236 (" 'Statutes must be construed so that no part of the statute is rendered surplusage or superfluous.' " (quoting *In re Rehab. of W. Investors Life Ins. Co.*, 100 N.M. 370, 373, 671 P.2d 31, 34 (1983))). The County also asserts that the statutes "are *in pari materia* and, if possible by reasonable construction, must be construed so that effect is given to both." *Abbott v. Armijo*, 100 N.M. 190, 191, 668 P.2d 306, 307 (1983).

{15} Bradbury & Stamm responds that the language of Section 13–4–2(E) is unequivocal, and the legislative directive must be heeded that "the contract *shall* be awarded to the resident contractor" (emphasis added) if its bid is within 5 percent of the out-of-state bid. The contractor marshals its own rule of statutory construction to support that view, asserting that if the wording of the statute is unambiguous, the word "shall" imposes a mandatory duty. *See N.M. Dep't of Health v. Compton*, 2000–NMCA–078, ¶ 11, 129 N.M. 474, 10 P.3d 153, *cert. granted*, 129 N.M. 385, 9 P.3d 68 (2000).

■ {16} In discerning what the legislature intended, we follow "[t]he first rule of statutory construction," which is " '[t]he plain language of a statute is the primary indicator of legislative intent.' " *Mem'l Med. Ctr., Inc. v. Tatsch Constr., Inc.*, 2000–NMSC–030, ¶ 27, 129 N.M. 677, 12 P.3d 431 (quoting *Gen. Motors Acceptance Corp. v. Anaya*, 103 N.M. 72, 76, 703 P.2d 169, 173 (1985)). According to Section 13–4–2(E), "the contract shall be awarded to the resident contractor ... if the bid price of the resident contractor is made lower than the bid price of the nonresident contractor when multiplied by a factor of .95." We find nothing in the statutes to indicate that this language is not mandatory. Before 1984, when Section 13–4–2(E) was

enacted, counties had substantial discretion to determine practicability. *See* N.M. Att'y Gen. Op. 65–05. That changed with the enactment of Section 13–4–2. *See Doyal v. Waldrop*, 37 N.M. 48, 52, 17 P.2d 939, 941 (1932) (noting that executive discretion to award contracts may be "limited in various degrees by statutory provisions"). Although Section 13–4–2(E) does not expressly address practicability, we construe the formula in that section to be the legislature's effort at a working definition of practicability that, by its nature, substantially divests the governmental entity of discretion to decide the matter on its own.

{17} Understood in this manner, the two statutes can be read harmoniously. The "whenever practicable" language of Section 13–4–1 is measured by the formula set out in Section 13–4–2(E). No longer is it necessary for a governmental entity to make "a written finding setting forth in particularity why such an award [to the resident contractor] is not 'practicable' under the circumstances," as prevailing authority before 1984 demanded. N.M. Att'y Gen. Op. 65–05. If a resident contractor does not bid within 5 percent of a nonresident contractor's low bid, the legislature has decided as a matter of law that the taxpayer will not be burdened with the additional expenditure of a local preference, and the governmental entity need not justify its decision to go out of state. On the other hand, when the bids are within 5 percent of each other, then the legislature has determined that the added cost is "practicable" for the taxpayer to bear in terms of balancing cost against benefit. In the interests of consistency and fairness across the state, the legislature has removed the burden of that decision from the governmental entity.

{18} As with any government procurement, the policy of offering a resident preference is to support "those persons and companies who contribute to the economy of the State of New Mexico by maintaining plants and other facilities within the state and giving employment to residents of the state." N.M. Att'y Gen. Op. 69–42 (1969). We acknowledge, as argued by the County, that such a policy taxes the citizens of this state, especially as the cost of any particular contract grows.

{19} In this regard, we observe that in 1989 our legislature eliminated the resident preference for general procurement contracts when bids exceeded $5 million. However, the legislature did not eliminate that same resident preference for public works contracts, nor did it set a cap on the value of the contract, even though resident preferences for both kinds of contracts were addressed in the same piece of legislation. *See* 1989 N.M. Laws, ch. 310, §§ 1, 2. We infer from this history that the legislature acted purposefully when it retained the resident preference formula for public works contracts notwithstanding the additional cost. The legislature is uniquely situated to make balanced judgments of this kind. In requiring the County to respect the statutory resident preference, we are simply enforcing the will of the legislature.

### Administrative Procedure

{20} The County argues that the district court should never have reached the merits of the case, nor should we, because the contractor failed to follow the appropriate administrative procedure before bringing its appeal to district court. The County contends that Bradbury & Stamm did not protest bidding irregularities to the County's purchasing agent, nor did its protest address with particularity any irregularity in the bidding process for the County to correct. Therefore, the County contends that we should uphold its decision to dismiss the protest for procedural irregularities. We disagree.

{21} The County announced its decision at a pre-bid meeting on August 31, 1999. When resident contractors pressed for an explanation of the decision, County officials required a written request. Bradbury & Stamm faxed a written request to Ms. Baggenstos, addressing her as the Bernalillo County Purchasing Agent. When the County did not respond, Bradbury & Stamm forwarded another written request, similarly addressed, a week later. The second request stated that the contractor needed the County's rationale for denying the resident preference so that it

could protest the decision if necessary. Two days later, September 9, 1999, still not having received a response from the County, Bradbury & Stamm formally protested the County's denial of the preference. The written protest again requested the County's rationale for the decision not to apply the preference, and reserved the right to amend the protest upon receipt of the rationale. The protest, sent by fax, was again addressed to Ms. Baggenstos as the County Purchasing Agent.

{22} Responding to this third request, the County faxed the contractor a document, titled *"DETERMINATION,"* explaining why the resident preference would not be applied to this contract. An accompanying letter from the county attorney dated September 8, 1999, referred to the document as "the determination made by the County of Bernalillo with regard to the jail construction."

{23} Having received the County's determination, Bradbury & Stamm filed an appeal in district court. *See* NMSA 1978, § 13–1–183 (1999) (authorizing judicial review of determinations). However, the County informed Bradbury & Stamm that the faxed document was only a response to its request for a rationale, not an appealable resolution of the contractor's protest as contemplated by the Procurement Code. *See* NMSA 1978, § 13–1–175 (1984). Although the parties disagreed on the legal import of the document faxed to the contractor on September 9, 1999, they stipulated to stay the proceedings in district court until the County ruled on the protest, which it promised to do by October 31, 1999. Once the County ruled on the protest, it would open the bids to determine whether the resident preference would affect the bid for the contract. If application of the resident preference would affect the award of the contract, the parties agreed to proceed with the appeal.

{24} We note that Bradbury & Stamm repeatedly requested the County's rationale for denying the resident preference from Ms. Baggenstos, addressing her as the County Purchasing Agent. When no correspondence was forthcoming, the contractor lodged its protest with her as well. Although the County insists that the bidding instructions require a protest to be filed with the county purchasing agent, a person it asserts is someone other than Ms. Baggenstos, Bradbury & Stamm was not informed of that fact until the County issued its dispositive decision on the protest, long after the protest was filed. By statute, "[a]ny bidder ... who is aggrieved in connection with a[n] ... award of a contract may protest to the state purchasing agent or a central purchasing office." NMSA 1978, § 13–1–172 (1987). A central purchasing office is statutorily defined as "that office or officer within a state agency or a local public body responsible for the control of procurement of ... construction." NMSA 1978, § 13–1–37 (1984). There is no dispute that Ms. Baggenstos was the senior buyer for the County, and the County's bidding instructions directed that all questions be addressed to her regarding the purchasing procedures. We conclude that lodging a protest with Ms. Baggenstos satisfied the statutory protest requirements because she was within an "office ... responsible for the control of procurement of ... construction." *Id.*

{25} Moreover, the County was well aware of the contractor's complaints. In response to Bradbury & Stamm's request for a rationale for denying the resident preference, the County issued a "determination." Once that "determination" was received from the County, Bradbury & Stamm filed its appeal as the statutes requires. The filing of the appeal, which included a verified petition for stay of enforcement and application for declaratory and injunctive relief, put the County on notice of all of the contractor's arguments. The stipulated stay for the appeal allowed the County to consider these arguments before issuing a formal response to the protest, and thus, the County was not prejudiced in any manner.

{26} Under the circumstances presented here, we hold that Bradbury & Stamm substantially complied with the statutory administrative process which allowed full consideration of the contractor's claim. *See Bogan v. Sandoval County Planning & Zoning Comm'n,* 119 N.M. 334, 344, 890 P.2d 395, 405 (Ct.App.1994) (observing that exhaustion of administrative remedies can be

"satisfied by an effort made in good faith"). From a practical perspective, the administrative process had run its course, and therefore the doctrine of exhaustion does not bar Bradbury & Stamm's appeal. *See id.* However, the remaining contractors did not attempt either to protest the bid or exhaust the administrative process, and therefore those other contractors have no standing to assert appellate claims. For this reason, they are dismissed from this appeal.

## CONCLUSION

{27} We hold that Section 13–4–2(E) provides the statutory formula for determining the practicability of applying the resident preference outlined in Section 13–4–1, and must be followed. We affirm the decision of the district court to that effect.

{28} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID, Judge, JAMES J. WECHSLER, Judge.