# CHARLESTON.

ALTA RHODES *v.* BOARD OF EDUCATION OF CLARK DISTRICT,
HARRISON COUNTY.

Submitted October 30, 1923. Decided November 13, 1923.

1. SCHOOLS AND SCHOOL DISTRICTS—*Teacher's Contract not In-
   validated Because Board Had not Regularly Fixed its Place
   of Meeting.*

   Under sec. 57, chap. 45, Code, a district board of education
   may legally employ teachers for the ensuing year prior to
   July 1st; and where a meeting of the board is held in the

month of June, on the day long established by custom as the regular monthly meeting day, and at the usual place of meeting, at which the president, secretary and all members are present, and teachers are appointed and the president directed to execute formal contracts with them; and in pursuance thereof such contracts are duly executed and filed with the secretary, such contracts will not be void because the board had not at its first meeting in July in the year previous fixed the time and place of its regular meetings as prescribed in sec. 45, chap. 45, Code.    (p. 63).

2.   SAME—*Teacher's Contract not Invalid Because District Supervisor Was not Present at Board Meeting.*

A contract so executed will not be invalid because the district supervisor was not present at the meeting and made no recommendation concerning the teachers employed. And especially so, where the resignation of the supervisor has been requested and is in the hands of the board for action thereon. (p. 64).

3.   SAME—*Teacher's Contract not Void, Because Certificate did not Accompany it When Tendered to Secretary of Board of Education for Signature and Filing—Teacher's Certificate Must be Filed with Secretary of Board of Education.*

A teacher cannot be employed unless she has received a teacher's certificate; but where such certificate has been issued and the board knows the fact and so states in the contract duly executed, that contract is not rendered void and of no effect because the certificate does not accompany the contract when tendered to the secretary for his signature and for filing in his office. The certificate must be filed with the secretary. (p. 65).

4.   SAME—*Teacher's Contract not Void for Want of Formal Application to Board.*

It is not necessary that a teacher make formal application in writing to the board for employment. Any member of the board or any other person for her may make informal application; and a contract to teach duly entered into between her and the board is not void for want of written formal application on her part.    (p. 66).

5.   SAME—*Where Contract Signed by Teacher and Board, Secretary's Duty to Sign and File is Ministerial.*

Where the board has legally appointed and employed a teacher and the contract in the form prescribed by the state superintendent of free schools has been signed by the president at the direction of the board, and signed by the teacher, it becomes a ministerial duty of the secretary as such to sign the con-

tract and file it with the records of his office. He has no discretion to refuse, where he knows that the contract has been made by order of the board, and his refusal or neglect to sign will not render the contract void.  (p. 67).

6.  MANDAMUS—*What may be considered in Determining Whether Delay in Applying for Mandamus was Unreasonable, Stated; School Teacher Held not Barred by Laches from Seeking Writ to Compel Secretary to Sign Contract of Employment.*

Mandamus may be refused where relator has unreasonably delayed his application therefor, by reason whereof the rights of respondent or innocent third parties will be prejudiced by issuance of the writ. In determining what constitutes such unreasonable delay justifying invocation of the equitable doctrine of laches, the circumstances which justified delay, the character of the case, situation of the parties, nature of relief demanded, and whether the rights of third parties have been innocently acquired, should be considered. Under the circumstances of this case the delay in applying for the writ will not warrant refusal; relator having shown a clear right to the remedy.  (p. 68).

Original proceedings in mandamus by the State, on the relation of Alta Rhodes, against the Board of Education of Clark District, Harrison County, and others.

*Writ awarded.*

*Homer Strosnider,* for relator.

*Will E. Morris, Robinson & Robinson,* and *E. G. Smith,* for respondents.

LIVELY, JUDGE:

Relator seeks to compel the board of education of Clark district, Harrison county, to recognize her as a teacher in the Fair Ground public school, to recognize as valid and binding a contract between her and the board dated the 29th day of June, 1923; and to compel J. K. Musser, secretary, to sign that contract.

On June 23, 1923, the board met, all members being present. A. P. Stewart, president, E. R. Coffman and U. G. Arnett, commissioners, composed the board. Stewart's term as president and Arnett's term as member expired on the 30th of that month. Wesley Rine was the newly elected president and W. J. Kyle the newly elected member, and their

terms began on the first of July following. It appears that Rine and Kyle were present at the meeting on June 23rd, and while they had no official right to sit with the board as thus constituted, they exhibited a commendable interest in the proceedings. After some routine business was dispatched the appointment and employment of teachers for the district was taken under consideration, and Arnett moved an adjournment of the meeting for the purpose of according the newly elected president and member an opportunity to consider the applications of teachers and make suggestions thereon; and the meeting was adjourned until the 26th day of that month for that purpose when the members were again all present, together with Rine and Kyle both of whom seem to have taken an active part in the selection, appointment and employment of teachers for the coming year. At this meeting, about fifty-two persons, as teachers, principals and a supervisor, were appointed and employed for the coming school year, their salaries fixed, and the president, Stewart, was directed to meet with the teachers on the 29th of that month and execute formal contracts. Coffman, a member of the board, registered a dissent. The minutes of the meeting, including the names and salaries of the teachers employed and what schools they should teach, were posted at the front door of the meeting place as required by statute. On the 29th of June, the president met with the various teachers and officers employed for the ensuing year and executed the formal contracts with them, using the form of contract perscribed by the state superintendent. Among these contracts was the one with relator, Alta Rhodes, and was duly signed by the president and by her. The contract recites that she was duly appointed as teacher in the public schools of Clark district for a term of eight months beginning on the 17th day of September, 1923, at a salary of $100 per month. The minutes noted her as employed as a teacher in the 3rd grade at Fairground school house. The secretary, Musser, was not present when these contracts were executed, but suggested that they be typewritten, which was done, and presented to him for signature later. These contracts, including relator's, were delivered to him that day, possibly in the afternoon; he neglected to sign as secretary, but kept them in his possession. Three days

later the board met, and the incoming president and member were inducted into office, and thereupon (on the 2d day of July) the board entered a resolution in which it recited that the meeting of the board held on the 23rd day of June and adjourned to the 26th day of June was illegal, and business transacted at those meetings was null, void and of no effect; upon motion of Coffman, concured in by Kyle, a new list or set of teachers, principals, etc. was employed to take the places of those formerly employed. Rine, the president of the board as then constituted, did not concur in the resolution for the appointment and employment of the new set of teachers, but declared that the board was legally and morally bound to recognize the contracts signed by Stewart, the outgoing president. Alta Rhodes, the relator, was not employed by the board as newly constituted. The schools were to begin on the 17th day of September, under her contract, and she appeared on the 10th of September at the Fair Ground school house, where she had been designated to teach under her contract, tendered her services, and was informed that she was not employed. Upon application to this court on October 15, 1923, she was awarded an alternative writ of mandamus against the board, the president and its members and against Musser, the secretary. The petition sets out the facts above stated, and there is an averment therein that she will be greatly damaged and deprived of the means of earning her livelihood by practicing her profession unless her contract is carried out and that it is now difficult to secure other employment because the like desirable positions in the schools are not now open; petitioner also avers that the newly elected president has refused to sign any of the purported contracts entered into by the board on the 2d day of July; that Musser has refused to sign her contract, but he has signed the contracts authorized by the new board. It might be stated here that Rine testifies that he has not signed any of the new contracts except that of the district supervisor, and he explains why that was done. The question of the validity of the new contracts, because of the failure of Rine to sign as required by statute, is not raised in this proceeding except inferentially. Musser was continued as secretary by the new board, succeeding himself. The board and the members Kyle

and Coffman and the secretary Musser move to quash the alternative writ, and make returns thereto.

The minutes of the three meetings, namely, June 23d, June 26th and July 2d are produced with the returns and are made exhibits with the evidence, and confirm substantially the allegations in the petition with reference thereto. The defenses set out in the motion to quash, and the answers and returns are substantially : (1) that the meeting held by the old board on the 23d of June, being the fourth Saturday in that month, and adjourned to the 26th, was illegal, and that the business transacted thereat was null and void because the meeting was not a regular one, the board having failed to designate any particular day or place for a regular meeting at the beginning of the school year of 1922; (2) that the district supervisor, C. M. Bailey, had not recommended the relator as required by section 56 of chapter 45 of the Code; (3) that relator had not filed with the secretary her teacher's certificate nor her institute attendance certificate; (4) that she had made no application for employment at or before the time she was employed by the old board, (5) salaries of teachers and the term of schools were not fixed by the meeting on June 26th; (6) that Stewart, the president, was not authorized to enter into the contract with her; and that Musser, the secretary did not sign the purported contract, not being authorized or directed by the board so to do; (7) that relator is guilty of unreasonable delay in instituting this suit, whereby, if the writ is awarded, the rights of the board, the public and a third person (the teacher who has been employed in her place), will be unduly prejudiced.

The returns also say that while Rine, president elect, and Kyle, commissioner elect, were present at the June 23d meeting they did not participate in the employment of the teachers, and deny that they submitted a list of teachers suggested by them for employment and that they concurred in the employment of the teachers then made. This averment is not material. However, the affidavit and deposition of Rine is that both he and Kyle took an active part in the appointment and employment of teachers and that a large number of the teachers so employed were selected at their instance and request, and that he was well pleased.

We do not think the grounds on which the motion to quash is based nor the defenses set up in the returns are sufficient. The first point of defense interposed, namely, that the meeting of the old board on the 23d of June and adjourned to the 26th was irregular and illegal, is the subject of much argument, and evidence. Sec. 45 of chap. 45 of the Code requires the board to hold regular meetings on the fourth Saturday of each calendar month when the schools are in session, or other regular day in the fourth week of that month, to be agreed upon by the board, and all such meetings to be held at a place to be designated by the board at its first meeting held on the first Monday in July. It seems that the board had not at its first meeting in July, 1922, designated the place and time at which it would hold its regular meetings. The regular meetings had been held on the fourth Saturday of each month as the law requires while the schools were in session. There is a controversy as to whether or not the schools were in session in June when the board held the meeting under dispute. It is contended by relator that the Fair Ground school was still in session on the first day of June, the commencement exercises having been completed on that day. The records of the board tend to show, and possibly do show that all of the schools were closed in the month of May and that none were in session in June. It seems that the money to pay the teachers had been exhausted and the length of the term had been curtailed for that reason. It is because the schools were not in session in June, and because the board had not at its first meeting in July, 1922, designated the time and place for the regular meetings, that the board now asserts that the June 23-26th meeting was illegal and therefore the contract entered into with relator was void. We do not think that it is material to the validity of this contract whether it was entered into at a regular or special meeting. The statute prescribes, sec. 57, chap. 45, that the board shall, on or before the first Monday in July in each year, if practicable, appoint the principals and teachers for all the schools and fix their salaries. It may be done at a regular or special meeting. If at a special meeting the members should have notice thereof and of the business to be transacted. Not only were all of the members of the board present on the 23d of June, but also the newly elected presi-

dent and members, and it appears that the meeting was adjourned for the special purpose of appointing and employing teachers, until the 26th at which time all of the members were again present together with the members of the incoming board, and all participated in selecting the teachers. *Capehart* v. *Board*, 82 W. Va. 217. "The fact that the board was not convened after due and lawful notice or in regular meeting as provided by law, is not material, if as a matter of fact all of the members were actually present and participated in the meeting." *Wysong* v. *Board of Education*, 86 W. Va. 57. It is true that Coffman objected to the employment of the teachers on that occasion, the list of which included relator, but not because of the alleged invalidity of the meeting. Moreover, it appears that while the board had not designated the time and place for holding its regular meetings, it had for many years past, possibly for eight years prior thereto, consistently met on the fourth Saturday of each month. In the spring of 1923 the usual meeting place had been changed to the Fair Ground school house, and the records and books of the board taken to that building, and thereafter the meetings had been regularly held at that place. There had been no departure from the custom, and we cannot see wherein any member of the board, teachers or employee or the public generally has been prejudiced by the meeting held on the 23d. The objection is technical and without merit. No advantage to any one accrued by reason of that meeting, and no one was prejudiced thereby.

Was it necessary to the validity of this contract that C. M. Bailey, the district supervisor, should have recommended relator for appointment and employment? Sec. 56 of chap. 45 prescribes the duties and powers of the district supervisor. He is required to attend all meetings of the board and is accorded the privilege of the floor, but no vote. He has authority to recommend for appointment from a list of applicants in the hands of the board a sufficient number of principals and teachers for the school district. His recommendation is not conclusive of the appointment of those he recommends. It is designed to aid the board in making proper selections, it being presumed that he knows the fitness and efficiency of the

teachers in the district. The board is not required to act on his recommendation. They have full power to appoint and employ. His recommendation is not a condition precedent to their appointment, being only advisory. Moreover, he was not present at this meeting, although it appears that he knew such meeting was to be had. It also appears that he was not in good standing with some of the members of the board. Stewart, the president, had asked for his resignation prior to that time, because of some alleged defalcation by him of the district school funds under his control. His resignation had been filed with the secretary, but it had not been acted upon by the board. The secretary had avoided or delayed production of the resignation at some of the former meetings. Both Stewart and Arnett say they would have paid no attention to the recommendation of Bailey, and that they both did not regard him as the district supervisor. He was in a twilight zone of authority. The list of teachers appointed and employed by the board on the 26th of June was selected by the members of the board and not only the fitness and efficiency of those appointed were considered, but because they had been formerly employed and had not received all of their salaries for lack of funds, the board felt inclined to favor them for that reason, and relator was one of those so favored. The recommendation or non-recommendation of the district supervisor cannot affect the validity of a contract regularly executed.

On the third point of defense it appears that the relator had been teaching in the district for about seven years and her certificate had remained with the secretary and with the records of the board until she had received a first grade certificate or at least there had been some change made or new certificate issued to her. This new certificate she had delivered to a Mr. Duncan who was connected with the Fair Ground school as principal, for delivery to the secretary. The secretary says it was not delivered, and Duncan is not sure what he did with it, but was under the impression that he hed delivered it either to the secretary or some member of the board. However, it was well known that she had such certificate and the contract itself recites that she holds a "First grade certifi-

cate,'' issued under the laws of the state. This certificate must be filed with the contract when it is executed by the teachers and signed by the president and secretary of the board. The board could not employ a teacher who did not have a valid certificate issued according to law. This fact was known to them. The statute requires that she file it with her contract. She has attempted to file her contract with the secretary who has refused to sign it and has refused to recognize that contract. Of course, before she can enter upon her duties as teacher that certificate must be filed with this contract when the contract shall have been signed by the secretarry, and this she is seeking to do by this writ, asking that he be compelled to complete the formalities of the contract as required by the statute. The certificate of attendance upon an institute is required to be filed with the secretary by the teacher before the opening of the school. It is not a condition precedent to the validity of the contract that a teacher should have attended an institute before his employment. Many of the institutes, including the one which relator attended, and for which she has a certificate found in the record, are held after the teacher has been employed. Indeed, the statute, sec. 115, chap. 45 of the Code, provides that if the institute is held after the opening of the school, the teacher shall file his certificate of attendance within ten days after the close of the institute.

The fourth point of defense is that relator had made no application for employment to the board. We do not find that the statute requires a formal application in writing. It appears that she had made verbal application to at least one member of the board, and when the list of teachers was proposed by Stewart, president of the board, her name was contained in that list. The board evidently understood that she was an applicant and as a matter of fact she was. It is not necessary that a teacher be an applicant in writing in order to be employed. She may be approached by the board or solicited by them to teach in the schools of the district, and when she consents to do so and the contract is entered into, it is immaterial whether or not she first indicates by application her desire to work. Relator was on the list of

teachers employed and it is immaterial how she was placed on that list. *Jameson* v. *Board of Education*, 74 W. Va. 389.

On the fifth point of defense, it is only necessary to say that the contract entered into fixed the term of the employment at eight months and the salary of relator at $100 per month, and designated the 17th day of September as the beginning of the term.

On the sixth point it appears that Stewart, the president, was authorized by the board to contract with relator for the school term 1923-4 on the day fixed for that purpose, June 29th. This is a sufficient authorization for the president to sign the contract. That was the substance of the board's direction to him in its minutes. But we do not find from the minutes that Musser, the secretary, was directed by the board to sign the contracts of the teachers employed on June 26th. It is asserted by respondent that it was necessary for such authorization and direction to be made; that a contract is not complete and is non-enforceable unless it is signed not only by the president but by the secretary. We do not think the refusal or failure of the secretary would vitiate the contract. He has no power or discretion in the employment of teachers; that is a power and duty resting solely with the board. His duty in that regard is purely ministerial. The statute requires him to sign; we think the effect of the requirement is for the purpose of identification, as a paper filed with the records of the board, and somewhat similar to the signature of a clerk of a court when a paper is filed in his office. His signature is a statutory requirement designed to preserve the evidence of the contract and identify it. It clearly appears that it was the understanding that he would sign, and the contracts were sent to his dwelling on the evening of the 29th for that purpose and at his request for his signature, and by direction of the president. He was present when the employment was made and spread the minutes upon the records and was cognizant of what was done. A formal direction of record, by the board, we think was not necesary in order that he should comply with the statute by signing. If it should be held that the secretary, by refusing to sign, could destroy the validity of a contract entered into between a teacher and the board, then he would be vested

with the power of employment and could affirm or nullify the contract by design or neglect. The secretary is the servant of the board and not its master. The statute requires the contract to be signed not only by the teacher and the president but by the secretary also; but we hold that where the board and teacher have legally contracted and the president has signed the contract in pursuance thereof upon the form of contract prescribed by the state superintendent of free schools then the secretary, if he neglect or refuse to sign as the statute requires can be compelled to do so; and this is one of the purposes of this action. He has no discretion to refuse. *Brown v. Owen* (Miss). 23 So. 35; *Independent Dist. v. Rhodes, President*, 55 N. W. 524.

The remaining ground on which the writ is resisted is that relator has been guilty of laches in not promptly instituting her suit; that she waited until after the schools had begun and another person employed in her stead, before she instituted her action, and therefore the board, the public and the teacher employed in her stead are prejudiced by her delay. This ground of defense has appealed to us as having some merit. She should have acted promptly. But it does not appear that relator knew her contract had been or would be repudiated until she presented herself at the Fair Ground school house where she had been employed to teach, upon the opening day of the school, in order to carry out her contract. She was standing on her contract, and until that time, so far as we can see by the record, did not know that she would be refused her position. Moreover, it appears that the person employed to take her place had not obtained the signature of the president of the board to his contract as required by statute. Evidently he took the risk of being ousted for want of validity of his contract. At that time there was considerable doubt throughout the state as to whether teachers could be employed before the first of July, for the ensuing year, and members of the board seemed to know that a proceeding to test that question had been, or would be, instituted in this court. It was not until the 30th day of August, 1923, that this court handed down the opinion in *Camp* v. *Board*; holding that a board of education, under sec. 57, chap. 45, Code, could contract with a teacher for the ensuing year prior to

July first; thus settling this much mooted question. 118 S. E. 877.· Under all these circumstances and uncertainties, we do not think the delay in bringing this action, after she had been refused the benefit of her contract on the 10th day of September when she presented herself for its fulfillment, would prevent her, by laches, from maintaining this action instituted on the 15th of October.

There is nothing in the record tending to show that relator is not an efficient teacher and duly qualified by education, experience, morality and upright conduct to teach in the public schools. Her character and efficiency are above reproach. She has taught in the community for many years, and apparently has established an enviable reputation. It seems to us that the controversy is the outgrowth of friction between the board as constituted prior to July first and as constituted after that date. The new members seem to have been desirous of employing teachers of their choice and did not accord that right to the old members. This observation does not apply to Rine, the newly elected president, because he is emphatic in his statement that he regarded the employment of teachers by the old board as legal and that he, having concurred therein at the meeting was morally bound thereby. The new board has evidenly sought for and interposed technical objections, not directed at relator specially, but for the purpose of nullifying the action of the former members. We think the facts and circumstances clearly warrant the issuing of the peremtory writ, and it will be awarded.

*Writ awarded,*