FRANK DeSTEFANO, JOSEPH J. CRAHAN, ERVILLE MADISON, FREDERICK C. KNAPP, CHARLES J. KLASEK, JR., JOHN J. O'DONNELL, FLOYD PRESTON AND FRANK ERRICKSON, PROSECUTORS, v. CIVIL SERVICE COMMISSION OF THE STATE OF NEW JERSEY, FERDINAND P. WALCOTT, C. STANLEY HOYT, JOHN R. LEONARD, EDMUND D. JENNINGS, DENNIS P. DONOVAN, OTTO WIEMER, CLIFFORD T. CASE, ANTHONY BORESCH, ROSS DI COMO, ALFRED C. FEAKES AND FRED HEDEMANN, COUNCILMEN OF THE CITY OF RAHWAY AND JOHN E. BARGER, MAYOR OF THE CITY OF RAHWAY, AND SAMUEL R. MORTON, CLERK OF THE CITY OF RAHWAY, AND LOUIS RIZZO, DEFENDANTS.

Argued October 1, 1940—Decided March 12, 1941.

Before Justices CASE, DONGES and HEHER.

For the prosecutors, *Eugene A. Liotta.*

For the defendant Civil Service Commission, *David T. Wilentz,* Attorney-General (*Harry A. Walsh,* of counsel).

For the defendant Louis Rizzo, *Francis P. Meehan.*

For all other defendants, *Eugene F. Mainzer.*

The opinion of the court was delivered by

HEHER, J. At the general election held in November, 1936, the electors of the City of Rahway accepted the provisions of the Civil Service Act of 1908, as amended and supplemented. *R. S.* 1937, 11:1-1, *et seq.* Prosecutors were then, and continued thereafter to be, chancemen designated under a local ordinance adopted in 1913, providing for the appointment of "suitable persons not exceeding eight in number" (increased to twelve by an amendment made in 1929) "to be known as chancemen," with "all the powers" and "duties of regular patrolmen when called upon" for service "by the Mayor or Chief of Police," and entitled to "receive while actually on duty the same compensation as regular patrolmen," and directing the local authority, "when appointing regular patrolmen," to "select them from the list of chancemen." The mayor was also thereby empowered to appoint "such special policemen as he may deem necessary for the preservation of the peace and good order of the City," who were likewise entrusted with all the powers and duties of "the regular patrolmen," at compensation to be "determined by the Common Council."

On April 28th, 1938, the defendant Civil Service Commission, pursuant to the request of the mayor made on February 16th, preceding, and after due public notice, held an examination for the "position" of "patrolmen" in the police department, "open to male citizens, resident" of the municipality for "at least two years," having a common school education, at least, and being not less than twenty-one nor more than thirty-five years of age, and thereafter certified an eligible list to the appointing power. On the prior April 1st, prosecutors protested the holding of the scheduled test on the ground that patrolmen should be appointed from "the now existing list of chancemen," some of whom were barred by age from taking the examination, but the Commission, on April 7th,

1938, held that the cited statute did not so provide, and that the chancemen were eligible for such examination only if they met the prescribed qualifications. Nothing further was done, except that on February 3d, 1940, in a proceeding instituted by prosecutors in this court, they were classified as "regular members of the police department, holding the position of chancemen." On September 15th, 1939, the defendant Rizzo, who was not a chanceman, was appointed patrolman from the register of eligibles thus certified by the Civil Service Commission; and on May 17th, 1940, this writ was sued out to review the proceedings.

It is now maintained that, in virtue of the cited local ordinance and *R. S.* 1937, 11:22-34, "the appointment of patrolmen is limited to chancemen;" and the action of the Civil Service Commission in holding "an open competitive examination for position of patrolman" before "the present list of chancemen was exhausted," and the appointment of Rizzo from the resulting eligible list, were therefore unlawful. It is said that, "when more members" of the police department "are needed, it is the duty of the Civil Service Commission to hold an examination, not for patrolmen but for chancemen, the lowest grade of officers in the department, and from which class promotions can be made to the office of patrolmen."

In *Albert* v. *Caldwell*, 123 *N. J. L.* 266, our court of last resort ruled that, under similar municipal action, the "position" of "chanceman is a regular position in the department to the same extent as the other positions," and that the occupants of such "are regular members of the department" appointed for part time service, and "entitled to tenure and to keep their positions unless discharged after hearing on charges, to the same extent as the chief or any other member."

The cited provision of the Civil Service act (*R. S.* 1937, 11:22-34) provides that "A vacancy in a position in the competitive class shall be filled, as far as practicable, by promotions from among persons holding positions in a lower grade in the department, office or institution in which the vacancy exists;" and that "promotions shall be based upon merit, to be ascertained by examinations provided by the commission, and upon the superior qualifications of the person promoted

as shown by his previous service, due weight being given to seniority and experience."

The determination of the question of whether it is "practicable" to fill a vacancy by promotion "from among persons holding positions in a lower grade," according to "merit, to be ascertained by examinations," involves the exercise of a sound discretion, guided by the central policy of the statute. Compare *Davaillon* v. *Elizabeth*, 121 *N. J. L.* 380.

But here there was no such exercise of discretion. The Civil Service Commission did not conclude that a promotional examination was impracticable in the circumstances; it proceeded on the hypothesis that the chancemen were not the holders of "positions in a lower grade." And now it is maintained on behalf of the commission that chancemen are not in a lower grade, since they "perform the same duties as patrolmen when working," and therefore constitute "merely an auxiliary body," with "no definiteness of employment." It is said further that a "chanceman is an apprentice but the Civil Service act does not recognize an apprenticeship."

This contention is obviously faulty. By local regulation made before the adoption of the Civil Service act, chancemen were given a rank beneath that of patrolmen. There was no continuity of service; they were invested with the powers and charged with the duties of "regular patrolmen" only when "called" to service "by the Mayor or Chief of Police." And the ordinance also enjoined the governing body, in the exercise of the authority to appoint "regular patrolmen," to "select them from the list of chancemen."

Thus it is that the Civil Service Commission, in the conduct of this examination, did not observe the limitations of the statute. Yet its action constituted a merely irregular exercise of its statutory function, and not an excess of power that is to be denominated a nullity. In such circumstances, inexcusable delay operates as an estoppel against the assertion of the right to vacate the action; and this is the situation here. While laches, in its legal sense, ordinarily connotes delay injurious to another, the public interest demands that a challenge directed to the Civil Service Commission's exercise of this authority be interposed with reasonable promptitude.

Sound economy dictates that questions relating to the regularity of the exercise of such power be determined with reasonable expedition. The proper administration of the affairs of the commission and of the local government forbid undue delay in such matters. Compare *Glori* v. *Board of Police Commissioners of Newark*, 72 *N. J. L.* 131; *Marjon* v. *Altman*, 120 *Id.* 16.

The writ is accordingly dismissed, but without costs.