STATE EX REL. KAY, *et al., etc.*

*v.*

STEINMETZ, *et al.*

(No. 11076)

Submitted November 3, 1959.    Decided November 24, 1959.

*Arden J. Curry*, for relators.

*McClintic, James, Wise & Robinson, Charles C. Wise, Jr., Robert E. Magnuson, Charles W. Caldwell*, for respondents.

BROWNING, JUDGE:

Petitioners, alleging themselves to be the duly appointed "Bridge Commission of the City of Dunbar, West Virginia," filed their original petition in this Court on July 29, 1959, seeking a writ of mandamus requiring respondents to vacate and cease usurpation of the office of members of that Commission and to turn over all documents, papers, and other property in their possession belonging to the Commission.

The petition alleges the creation of the Bridge Com-

mission, as authorized by Michie's 1955 Code §§ 1687 (2) [17-17-30], by Ordinance No. 126 of the City of Dunbar. Ordinance No. 126 provides in part as follows:

"Section 1. There shall be, and there is hereby created a commission to be known as 'The Bridge Commission of the City of Dunbar, West Virginia'. The said Commission shall consist of seven members, who shall be appointed by the Mayor, and whose appointments shall be confirmed by the City Council. The Mayor shall appoint said Commission as soon as may be after this ordinance becomes effective, and shall designate the Chairman thereof at the time of such appointments. The said Commissioners shall immediately enter upon their duties and hold office until all revenue bonds issued by said Commission shall be retired and fully paid off. * * *"

The petition further alleges the appointment and confirmation by the City Council of petitioners; their entry upon their duties; the construction and financing of a bridge across the Kanawha River between Dunbar and South Charleston, West Virginia; and the subsequent creation by the City Council, by Ordinance No. 176, of an "Alternate Bridge Commission" to function "whenever the Regular Commission, or its officers, declines, refuses, or is unable for any reason to act, * * *"

The petition then alleges the removal, by the Mayor of Dunbar, after notice, of four of the petitioners and their replacement by new appointees; the refusal of the Bank of Dunbar to honor any checks drawn on it by the Bridge Commission after August 9, 1957; and the passage by the City Council, on September 3, 1957, of Ordinance No. 177, by which: (1) Ordinance No. 176 was repealed in its entirety; (2) The existing bridge commission was abolished; (3) A "new commission" was created, naming the respondents, or certain of their predecessors in office; and (4) Amending Section 1 of Ordinance No. 126, establishing four year terms for commissioners and providing for their removal from office at the will and pleasure of the Mayor.

The petition then alleges that: The Commission named in Ordinance No. 177, or their successors in office, immediately took over the bank account and other properties of the bridge commission and have usurped the powers and duties of petitioners; petitioners have continued to have meetings at which they discussed the problems of the bridge commission; petitioners have made demands upon respondents to cease usurping the powers and duties of the bridge commission, which demands have been refused; Ordinance No. 177 is void; a suit has been instituted against petitioners as members of the Bridge Commission, and it is necessary for them to be recognized as such in order to answer such suit; and concludes with a prayer for the relief hereinabove mentioned.

A rule was issued pursuant to the petition directing respondents to appear before the Court on September 29, 1959, and show cause why the writ as prayed for should not be awarded. Respondents appeared in response to the rule and demurred to the petition on the grounds: (1) Petitioners, in seeking restoration to public office, have wholly separate and distinct rights which prevent their joinder as petitioners in a mandamus proceeding; and (2) Petitioners are guilty of laches in not initiating the proceeding for almost two years following their removal from office; and answered, admitting the historical recitals of the petition, but denying that petitioners are the duly appointed bridge commission or that respondents have usurped petitioners' offices, and allege that by virtue of the provisions of Section 19 of the Dunbar Charter, which empowers the Mayor, upon notice, to remove any of his appointees, and gives the person so removed the right of appeal to the council, the petitioners removed by the Mayor, having failed to appeal to the council, no longer have any right to serve as members of the Bridge Commission; Ordinance No. 177 was not passed to effect the removal of any of petitioners from office, but to satisfy the requirements of the Bank of Dunbar so that the bank would honor checks drawn upon it by the commission; respondents are the validly and legally constituted members of the Bridge Commission; and, in paragraph

11 of the answer allege that respondents have been in control and exercised full authority over the bridge, its employees, officers and manager; held regular meetings; met with representatives of the bondholders and have been recognized by them; consulted with the consulting engineer, as provided by the trust agreement; have prepared, approved and controlled the annual operating budget; have collected hundreds of thousands of dollars in revenue and disbursed the same; have leased property not used for bridge purposes; purchased other real property; created a reserve fund account, invested moneys, and directed payment of coupons; entered into contracts for lighting and insurance; hired employees; expended funds for maintenance and repair; and have now the complete jurisdiction, control, and management of said bridge facility.

The answer further denies that petitioners have had anything whatsoever to do with the management, control, and operation of the bridge since their removal approximately two years ago and are guilty of laches in failing to seek restoration until July 29, 1959.

Petitioners replied generally and prayed that respondents' answer be dismissed and that petitioners be granted the relief prayed for by them in their petition.

It is stipulated that the bonds executed by the petitioners, and certain extracts from the minutes of the City Council of Dunbar, may be considered as evidence in this proceeding and that the allegations contained in paragraph 11 of respondents' answer concerning the business and affairs of the Bridge Commission *since August 9, 1957, shall be considered to be true.*

Depositions were taken in behalf of both petitioners and respondents. Petitioners, C. R. Kay, M. R. Young, and James V. Stewart, all testified that they had continued to hold meetings in various homes after they were locked out of the Bridge Commission offices in August, 1957, at which meetings bridge business and means to remedy the situation in which they found themselves were discussed. The minutes of those meetings, stated

by Kay to be "where I can lay my hands on them at any time", although demanded by counsel for respondents, were not produced.

Respondents adduced principally the testimony of Mayor Barker, who stated that he had removed four of petitioners from the Bridge Commission and appointed others to take their places. Mayor Barker also stated that Ordinance No. 177 was drafted by attorneys for the Bank of Dunbar and representatives of the bondholders and was passed as a condition precedent to the honoring by the Bank of Dunbar of any checks drawn upon it by the Bridge Commission.

Mandamus is the proper remedy by which these petitioners may be restored to their offices if they have shown a clear legal right thereto. *Hertzog* v. *Fox, Mayor of the Town of Worthington, et al.*, 141 W. Va. 849, 93 S. E. 2d 239, and many prior decisions of this Court cited in the opinion of that case. However, assuming the existence of a clear legal right to the offices in question, which respondents expressly deny, respondents contend that petitioners are not entitled to the relief sought because of laches or, in the alternative, that relief is barred by the one year limitation provision of Code, 55-2-12, as amended, which reads:

> "Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative."

While a mandamus proceeding is on the law side, we find no decision of this Court, nor are we cited to any, holding that a proceeding in mandamus is limited by

this statutory provision. However, there is authority in this jurisdiction, which is in accord with the weight of authority elsewhere, that in such a proceeding the equitable defense of laches is available to a respondent if the facts warrant. *Rhodes* v. *Board of Education, etc.,* 95 W. Va. 57, 120 S. E. 183; *Cunningham* v. *City of Huntington,* 97 W. Va. 672, 125 S. E. 810, 35 Am. Jur., Mandamus, §312, 55 C.J.S., Mandamus, §244. The position of the Supreme Court of the United States upon this question is interesting. In *U. S. ex rel. Arant* v. *Lane,* 39 S. Ct. 293, 249 U. S. 367, 63 L. Ed. 650, the first headnote reads: "Under the Code of the District of Columbia, as on general principle, the allowance of the writ of mandamus is a matter of sound judicial discretion, and applications therefor are limited as to time by the equitable doctrine of laches and are not within the general statutes of limitations." In that case a government employee under civil service was removed from office without a hearing, and twenty months later sought a writ of mandamus to be restored to the office; but the Supreme Court affirmed the holdings of the lower courts, and in the opinion said: "* * * Such a long delay must necessarily result in changes in the branch of the service to which he was attached and in such an accumulation of unearned salary that, when unexplained, the manifest inequity which would result from reinstating him renders the application of the doctrine of laches to his case peculiarly appropriate in the interests of justice and sound public policy."

The sixth syllabus point in *Rhodes* v. *Board of Education,* 95 W. Va. 57, 120 S. E. 183, reads: "Mandamus may be refused where relator has unreasonably delayed his application therefor, by reason whereof the rights of respondent or innocent third parties will be prejudiced by issuance of the writ. In determining what constitutes such unreasonable delay justifying invocation of the equitable doctrine of laches, the circumstances which justified delay, the character of the case, situation of the parties, nature of relief demanded, and whether the

rights of third parties have been innocently acquired, should be considered. Under the circumstances of this case the delay in applying for the writ will not warrant refusal; relator having shown a clear right to the remedy." In that case the petitioner, a school teacher, relied upon a contract between her and the board, dated June 29, 1923; on September 10, the teacher was informed that she was not employed; and the application for the writ was made on October 15. However, in *Cunningham* v. *City of Huntington*, 97 W. Va. 672, 125 S. E. 810, a police officer of the City of Huntington sought to be restored to his former position of Bertillion Inspector from which he had been removed nine months prior to filing his application for a writ of mandamus. Relief was denied by this Court and in the opinion the Court said: "Where, without authority or where the proper proceedings have not been taken, an officer is removed from an office which he had a legal right to hold, and is entitled under the law and facts to reoccupy, and he neglects to promptly apply for mandamus to restore him to such office, and delays for nine months, without sufficient excuse or explanation to seek this remedy the relief sought should be denied him because of his laches. No precise rule can be laid down as to what constitutes laches in applying for mandamus, thus every case must depend upon its own facts and circumstances."

The burden of showing sufficient excuse for their delay in exercising by the writ of mandamus the petitioners' right, if any they had, to be reinstated on the bridge commission was upon the petitioners. This rule was laid down in the *Cunningham* case. It is obvious from the pleadings, stipulation of facts, and evidence in this proceeding that petitioners' delay has prejudiced not only the respondents, but a large segment of the public as well. The petitioners have shown no valid excuse for the delay of almost two years from the time of their ouster from the commission to the filing of their petition in mandamus in this Court. Their laches precludes them from the relief they seek. Thus, we do not reach the

other issues raised by the parties in this proceeding. The writ must be denied.

*Writ denied.*