STATE OF WEST VIRGINIA *ex rel.* ANTON D. MUSICK

*v.*

JOSEPH W. LONDEREE, MAYOR OF THE CITY OF SOUTH CHARLESTON, *et al.*

(No. 12024)

Submitted May 4, 1960.          Decided June 28, 1960.

*J. Campbell Palmer, III,* for relator.

*George W. Stokes,* for respondents.

GIVEN, JUDGE:

This original proceeding in mandamus is prosecuted by relator, State of West Virginia ex rel. Anton D. Musick, against Joseph W. Londeree, Mayor of the City of South Charleston, the council of that city, and the police civil service commission of that city, for the purpose of requiring defendants to appoint or confirm relator as a lieutenant in the police department, and to have awarded to relator salary retroactive to the time he contends he should have been permitted to exercise the functions of the office of lieutenant. The matter is heard on the petition of relator and the exhibits filed therewith, the answer of defendants and the exhibits filed therewith, the demurrer of defendants to the petition, and briefs and oral arguments of the respective parties.

The defendant Londeree is Mayor of the City of South Charleston, a municipal corporation with a population of more than five thousand. Anton D. Musick, relator, on September 1, 1947, became a member of the police department of that city and, on July 1, 1954, was promoted to, and is now serving as, sergeant of that department. He contends, however, that such promotion should have been made on May 2, 1952, when a promotion was made of another patrolman to a vacancy of a position of sergeant.

Relator alleges that on October 17, 1957, a vacancy in the position of lieutenant in the police department existed and, though relator had successfully passed a competitive examination held by the civil service commission and was, in all respects, qualified and eligible for promotion to the vacancy then existing in the police department, a person other than relator was promoted thereto. He further alleges that, on March 1, 1959, A. E. Jones, theretofore a lieutenant in the police department, was promoted and qualified

as a captain in the police department, and that relator was then the only sergeant on the police force eligible to the vacancy of a lieutenant created by the promotion of Lieutenant Jones, and that at all times he was, and still is, eligible and qualified to fill the position of lieutenant, but that defendants have failed and refused to make or confirm his promotion or appointment, and that such vacancy continues to exist.

It further appears from allegations of the petition that relator, soon after the promotion of Lieutenant Jones to a captaincy, and continuously thereafter, protested the failure of defendants to appoint or promote relator to the position of lieutenant, to the vacancy created therein by the promotion of Lieutenant Jones. On October 22, 1959, the police civil service commission convened for the purpose of considering the protests of relator concerning "his failure to secure a promotion * * * of lieutenant" and, after due consideration, held that the request of relator "comes too late, and that by reason of laches and lapse of time in making such request, the same should be denied".

It is further alleged in the petition that "a vacancy does presently exist in the position of Lieutenant", but that "there are no set number of Lieutenants" in the police department. There is an absence of any showing, by allegation or otherwise, that the charter of the City of South Charleston, or any ordinance of that city, or any statute, requires that any definite number of lieutenants be had or maintained in or by the city.

As to the right of petitioner to the office of lieutenant, or as to any salary therefor, as of October 17, 1957, we are of the opinion that he is precluded in relation thereto, because of laches or unreasonable delay in asserting his rights. The controlling principle was discussed and decided in the recent case of *State ex rel. Kay v. Steinmetz*, 144 W. Va. 802, 111 S. E. 2d 27. In the opinion in that case it is made clear that where an individual is entitled to hold or occupy a public office, but is prevented from doing so, he must

assert his claim or right thereto in a proper proceeding within a reasonable time, or he will be barred by laches. Reasonable promptness is demanded in such circumstances, because of the public policy requiring that title or rights to a public office be settled without unnecessary delay. See *Hertzog v. Fox, Mayor,* 141 W. Va. 849, 93 S. E. 2d 239; *Cunningham v. City of Huntington,* 97 W. Va. 672, 125 S. E. 810; *Rhodes v. Board of Education,* 95 W. Va. 57, 120 S. E. 183.

As to the vacancy alleged to have occurred March 1, 1959, by the promotion of Lieutenant Jones to a captaincy, we think the facts disclose a different situation. Petitioner, in a very short time after the promotion of Lieutenant Jones, made known to the proper authorities his claim to the promotion to the alleged vacancy, and almost continuously thereafter insisted that his promotion be made. Any unreasonable delay can be attributed only to defendants. Petitioner, with due diligence, continued his efforts before the proper city authorities, and soon after having been denied any relief by them, sought relief in this Court. Such vacancy, if any exists, has remained unfilled. It can hardly be questioned that, assuming such vacancy exists, petitioner is entitled to be promoted or appointed thereto. See *Gartin v. Fiedler, Mayor,* 129 W. Va. 40, 38 S. E. 2d 352; Michie's 1955 Code of West Virginia, Article 5A of Chapter 8; 67 C.J.S., Officers, Section 54(2). We therefore reach the contention of defendants that no vacancy in the position of lieutenant exists.

As above noticed, the petition herein admits that "there are no set number of Lieutenants" in the police department of the City of South Charleston. Our Constitution, Article IV, Section 8, provides: "The Legislature, in cases not provided for in this Constitution, shall prescribe, by general laws, the terms of office, powers, duties and compensation of all public officers and agents, and the manner in which they shall be elected, appointed and removed." The Constitution contains no provision relating to appointment of lieu-

tenants in the police department in any municipality. Code, 3-10-11, as amended, after providing for the filling of certain vacancies in offices not involved here, contains this provision: "Any vacancy in any other office filled by appointment, or in any office hereafter created to be filled by appointment, shall be filled by the same person, court or body authorized to make appointment to such office for the full term thereof." The charter of the City of South Charleston, enacted in 1919, Section 4, after making provision for certain officers not pertinent here, provides that the city may have "such other officers and agents as the said council may, from time to time, create or employ". Section 6 of the charter reads: "All the corporate powers of the said town shall be exercised by the said council or under its authority, except when otherwise provided". Section 7 vests in the council numerous and broad powers relating to the control and management of affairs of the city, including the right to "create, establish, abolish and organize employments and fix the compensation of all employees"; and Section 37, after providing for the filling of vacancies occurring as to certain offices, provides that "If any vacancy occurs in any appointed office the same shall be filled subject to the regulations of the original appointment." Code, 8-5A-11, as amended, relating to civil service for police departments, in so far as may be material, reads: "Vacancies in positions in the police department shall be filled, so far as practicable, by promotion from among persons holding positions in the next lower grade in the department. Promotions shall be based upon merit to be ascertained by tests to be provided by the civil service commission and upon the superior qualifications of the persons promoted, as shown by his previous service and experience * * * ".

In *State of West Virginia ex rel. Jones v. Ingram,* 135 W. Va. 548, 63 S. E. 2d 828, we held: "2. A writ of mandamus does not lie to compel the recorder and councilmen of a municipal corporation, organized under Chapter 8, Code, to fill an undeclared vacancy in

the office of mayor, assumed to exist by reason of the alleged removal of the residence of such officer from the corporate limits of the municipality.'' In that case, however, the question was whether a vacancy in the office of mayor had been created by the removal of the residence of the mayor from the town of Cedar Grove. The authority for, or the existence of, an office was not involved. In the instant proceeding the admission that there is no set number of lieutenants in the City of South Charleston clearly raises the question of whether the position formerly occupied by Lieutenant Jones, which relator claims the right to occupy, is one required by any authority to be filled, or whether that position, if such position exists, is one which may be filled only at the option or discretion of the city council, or some other authority.

In 42 Am. Jur., Public Officers, Section 31, it is stated: ''A public office, as defined above, must exist before there can be a public officer, and it is generally necessary that there be a de jure office before there can be a de facto officer. Again, a public office cannot exist without authority of law expressed through some constitutional or statutory provision. Every sovereign government has within its own jurisdiction the right and power to create whatever public offices it may regard as necessary to its proper functioning and its own internal administration and to abolish such offices as it may deem superfluous * * * ''. In 37 Am. Jur., Municipal Corporations, Section 227, we find this statement: '' * * * Ordinarily, in the absence of constitutional or statutory restrictions, when a municipal corporation has power to create an office, it may abolish it. An office created by municipal ordinance may be abolished by ordinance; thereafter the incumbent ceases to be an officer. Even when an officer by reason of having been appointed for a definite term, or by special statutory provision, cannot be lawfully removed except for cause after a full hearing, his office may be summarily abolished whenever the proper municipal authorities deem it advisable. Tenure of

office statutes and civil service statutes do not prevent a bona fide abolition of the office by the municipality. Moreover, statutes to protect the tenure of office of veteran soldiers and sailors will not prevent the abolition of municipal offices. In such cases, however, the office must be abolished in good faith; and if immediately after the office is abolished another office is created with substantially the same duties and a different individual is appointed, or if it otherwise appears that the office was abolished for personal or political reasons, the courts will interfere * * * ''.

In 62 C.J.S., Municipal Corporations, Section 467, it is stated: ''As a general rule a municipal corporation may abolish a municipal office where authorized by charter or statute or where the office was created by it, provided the abolition is in good faith.'' In 67 C.J.S., Officers, Section 51, we find this statement: ''The power to appoint implies the power to determine whether a vacancy exists.'' See *Calley & Damron v. Blake, Clerk,* 126 W. Va. 696, 29 S. E. 2d 634; *State ex rel. Hatfield v. Farrar, Mayor,* 89 W. Va. 232, 109 S.E. 240; *Hatfield v. County Court of Mingo County,* 80 W. Va. 165, 92 S. E. 245; 15 M.J., Public Officers, Section 28; *State ex rel. Wimberly v. Barham,* 173 La. 488, 137 So. 862; *State ex rel. Bolin v. Webster Parish School Board* (La.), 157 So. 142; *People ex rel. Foley v. Prendergast,* 345 Ill. App. 235, 102 N. E. 2d 668; *DeStefano v. Civil Service Commission of New Jersey,* 126 N. J. L. 121, 18 A. 2d 621.

From the statutes and authorities mentioned it seems clear that the council of the City of South Charleston, the duly constituted legislative body of that city, is vested with the power and discretion to determine the number of lieutenants necessary or proper for the efficient operation of the police department of that city. The language of Section 4 of the charter, quoted above, providing that the city may have ''such other officers and agents as the said council may, from time to time, create or employ'', and the language of Section 7 of the charter quoted above, that such body shall

have power "to create, establish, abolish and organize employments", and other provisions quoted, must be given such effect. Such conclusion is in accord with applicable decisions and other authorities to the effect that the council of a municipality, where given such broad powers, and where not prohibited by some constitutional provision, constitutes the body "empowered to exercise the sovereign powers of government vested in the corporation, and which in general constitutes the legislative body or branch of the municipal government". 62 C.J.S., Municipal Corporations, Section 385. We are not, of course, saying that such powers may not be limited by the State Legislature, as, in fact, has been done in some respects by our Legislature in the enactment of the legislation relating to civil service for police departments. We find no provision of such legislation, however, which indicates any limitation on the council of the City of South Charleston to determine the number of lieutenants needful or necessary for the efficient operation of the police department of that city. In the absence of some provision of law establishing the number of lieutenants required, or a determination by some proper authority that a vacancy exists in the office of lieutenant, we can not assume the permanency of the office, or the necessity for the filling thereof, merely because some person has previously performed functions as to such office.

Obviously, some body or authority of a municipality should be vested with the power and discretion to determine, at any given time, the necessity for the creation or abolition of offices or positions of employment where not established by the Legislature or the Constitution. It is not unusual for a municipality to find a necessity for special or temporary officers. In the nature of things, offices or positions within a municipality may, of necessity, be increased or decreased from time to time. The necessity for such an increase may be occasioned by such matters as an increase in population, or stricter and more effective enforce-

ment of the laws. The necessity for such a decrease may result from such matters as lack of funds, decrease in population, or less need for enforcement of the laws. As pointed out above, however, any such change must be made in good faith, not motivated by any political or other improper objective. We find no such improper motive in the instant proceeding.

Since "no set number of Lieutenants" is provided for by the statutes of the State or the ordinances of the city, and since the city has the right and discretion to determine the existence of or necessity for filling any such vacancy as is alleged to exist, we must hold that petitioner has failed to make a case warranting the issuance of a writ of mandamus. He has shown no clear legal right to the office to which he seeks promotion. *State ex rel. Graney v. Sims,* 144 W. Va. 72, 105 S. E. 2d 886; *State ex rel. West Virginia State Lodge, Fraternal Order of Police v. City of Charleston,* 133 W. Va. 420, 56 S. E. 2d 763.

*Writ denied.*