STATE OF WEST VIRGINIA *ex rel.*
WALLER CHEMICALS, INC., *etc.*

*v.*

CHARLES McNUTT, DIRECTOR OF PURCHASES FOR THE STATE
OF WEST VIRGINIA

(No. 12726)

Submitted February 27, 1968.    Decided March 26, 1968.

*Goad & Goodwin, Andrew J. Goodwin,* for relator.

*C. Donald Robertson,* Attorney General, *Thomas P. O'Brien, Jr.,* Assistant Attorney General, for respondent.

HAYMOND, JUDGE:

This is an original proceeding in mandamus instituted in this Court February 5, 1968, in which the petitioner, Waller Chemicals, Inc., a West Virginia corporation, seeks a writ to require the defendant, Charles McNutt, Director of Purchases for the State of West Virginia, to vacate and set aside all contracts made by his predecessor in office, Clarence E. Johnson, in the name of State of West Virginia with Odorite Service and Supply Company of Morgantown, West Virginia, and Ohio Valley Supply Company of Huntington, West Virginia, based upon a joint bid made by those corporations for certain products and services to be furnished and supplied to the State of West Virginia by the foregoing corporate bidders.

Upon the petition this Court issued a rule returnable February 27, 1968. Upon the return day of the rule the defendant filed his demurrer and answer to the petition and at that time this proceeding was submitted for decision upon the foregoing pleadings and the exhibits filed with the answer and upon the written briefs and the oral arguments of the attorneys in behalf of the respective parties.

The material facts are not disputed and the question presented for decision is a question of law.

Pursuant to Section 12, Article 3, Chapter 5A, Code, 1931, as amended, Clarence E. Johnson, the predecessor of the defendant, as Director of Purchases of the State of West Virginia, solicited sealed bids for certain floor maintenance products and, after due notice, requested by published printed form bids for the purchase of such products. Eight different bids, including a bid by the petitioner and a joint bid by Odorite Service and Supply Company and Ohio Valley Supply Company, were submitted to the Director.

The petitioner alleged that prices in the bid submitted by it were ten to twenty per cent lower than the prices in the bid submitted by the next lowest bidder. The allegation was denied by the defendant who alleged in his answer that the bid of the petitioner was not the lowest bid and did not meet certain requirements of the specifications.

The bids were considered by the Director, who held a hearing, and the Director determined that the bid of the petitioner was not the lowest responsible bid because certain products quoted by it did not meet the rigid specifications. The defendant also denied the allegation of the petitioner that the value of the contract made by the Director was in excess of $200,000.00 and asserted in its answer that the billings for the first four months of the contract, which was awarded October 17, 1967, amounted to only $11,890.00. The defendant also alleged that he and his predecessor knew that the petitioner was a small company, incorporated in March 1967, and that they doubted that it could furnish, from its single base in Ohio County, adequate services and delivery to all State agencies; that the joint corporate bidders had previously furnished satisfactory products and services; and that these matters were considered by the Director in awarding the contract. It also appears from a report to the then Director, which is an exhibit filed with the answer, that the joint bid was the only bid that complied with all specifications.

On June 13, 1967, the date for the receipt of the bids, Odorite Service and Supply Company and Ohio Valley Supply Company, with a letter of that date, submitted a joint bid to the then Director for the floor maintenance products involved in this proceeding. That letter contains these main provisions:

"Products quoted in our bid are produced by Lab Automated Chemicals of Baltimore, Maryland, for whom Odorite Service & Supply Company and Ohio Valley Supply Company have been designated franchised distributors for the State of West Virginia. As such, we can both provide the same bid products and services at the same price. In order to help us sell at the bid price, we have between ourselves assigned responsibility for different parts.

"Initially Ohio Valley Supply Company will serve the counties of Mason, Putnam, Kanawha, Clay, Nicholas, Greenbrier, Monroe, Summers, Mercer, McDowell, Wyoming, Raleigh, Boone, Logan, Mingo, Wayne, Cabell, Fayette, Lincoln; and Odorite Service & Supply Company will

serve the following counties: Jackson, Roane, Wood, Wirt, Calhoun, Pleasants, Ritchie, Gilmer, Braxton, Webster, Pocahontas, Randolph, Lewis, Upshur, Barbour, Tucker, Doddridge, Pendleton, Harrison, Taylor, Marion, Monongalia, Preston, Grant, Hardy, Mineral, Hampshire, Morgan, Jefferson, Berkeley, Tyler, Wetzel, Marshall, Ohio, Brooke and Hancock.

"If we are successful in receiving this contract, we may from time to time reassign some County from one company to another. In that event we will so notify the State institutions located in the affected county.

"However, regardless of any agreement between ourselves, either of the undersigned companies can if necessary or desirable fulfill the contract on a state-wide basis."

In support of its petition for a writ of mandamus the petitioner assigns these grounds: (1) The contract is invalid because the joint bid on which it is based was illegal and in violation of Section 38, Article 3, Chapter 5A, Code, 1931, as amended; and (2) the bid of the petitioner was the lowest responsible bid and should have been accepted by the Director.

On the contrary the defendant contends that (1) the joint bid was not violative of Section 38, Article 3, Chapter 5A, Code, 1931, as amended, but was a valid bid; (2) the Director did not abuse his discretion in rejecting the other bids and in accepting the joint bid; (3) the Commissioner of Finance and Administration, who is required to sign contracts signed by the Director, is a necessary party to this proceeding; (4) the contract, having been partially performed, can not be cancelled or a rebidding required in a mandamus proceeding; and (5) the petitioner has failed to make a prior demand that the Director cancel the contract and require the submission of new bids.

The statute which the petitioner insists was violated by the acceptance by the Director of the joint bid of Odorite Service and Supply Company and Ohio Valley Supply Company, to the extent here pertinent, provides that: "It shall be unlawful for any person to jointly combine or

collude or conspire in any way to affect the market, or price, or supply of commodities and printing obtained or to be obtained by the State under the provisions of this article, and upon violation thereof such person shall be guilty of a felony. * * *." The statute is a criminal statute and for that reason must be strictly construed. It is significant that the statute does not mention or expressly refer to a bid of any supplier or suppliers. Obviously a joint bid of two or more persons of itself and without more is not within the scope of the statute and does not constitute a violation of any of its provisions. There is no showing of any combination or collusion or conspiracy upon the part of the Director or the corporate joint bidders to affect the market or price or supply of commodities or printing obtained or to be obtained by the State or that the bid was submitted with that intent or for that purpose. On the contrary it appears that the joint bid was submitted by the bidders and accepted by the Director openly and in good faith, that it was the only bid that met all the requirements of the specifications, that it was the lowest responsible bid, as determined by the Director, and that the State will derive greater benefit from the acceptance of such joint bid than it would have derived from the acceptance of the bid submitted by the petitioner which was not accepted by the Director. The joint bid was not within or proscribed by the statute, was not an illegal or invalid bid, and the contract of the Director based on the joint bid will not be cancelled in this mandamus proceeding. The joint bid of the two corporations for certain floor maintenance products and services to be furnished to the State of West Virginia, submitted openly and in good faith to the Director of Purchases, who accepted such bid and signed a contract with the bidders, which bid was not intended to affect and did not affect the market or price or supply of commodities or printing obtained or to be obtained by the State, is not invalid as violative of the statute which provides that it shall be unlawful for any person jointly to combine or collude or conspire in any way to affect the market or price or supply of commodities and printing obtained or to be obtained by the State, and the contract based on such joint bid will

not be cancelled or disturbed in a mandamus proceeding at the instance of a person whose bid for such products and services was not accepted by the Director.

The determination by the Director that the bid of the petitioner was not the lowest responsible bid submitted was not arbitrary or capricious and did not constitute an abuse of discretion. Such determination by the Director of Purchases that a particular bid is not the lowest responsible bid submitted for certain products and services to be furnished will not be controlled in a mandamus proceeding unless it appears that his action in making such determination was fraudulent or collusive or constituted an abuse of the discretion vested in him by law. *State ex rel. Printing-Litho, Inc.* v. *Wilson*, 147 W. Va. 415, 128 S. E. 2d 449; *Butler* v. *Printing Commissioners*, 68 W. Va. 493, 70 S. E. 119, 38 L. R. A., N. S., 653. In the *Printing-Litho* case this Court held in point 2 of the syllabus that "A writ of mandamus will not issue to control the action of an officer or board vested with discretion in the absence of fraud, collusion, or a palpable abuse of such discretion." In consequence, the action of the Director in refusing to accept the bid of the petitioner will not be interferred with or disturbed by this Court in this proceeding.

The writ sought by the petitioner should be refused on the additional ground that there has been unreasonable delay by the petitioner in challenging the validity of the contract and in seeking its cancellation. The contract has been in effect since October 17, 1967 and the joint bidders have been furnishing products and services under it from its date until the institution of this proceeding in February 1968, a period of approximately three and one-half months. To cancel the contract after its partial performance for that length of time would be clearly prejudicial to the rights of both the bidders and the State. This Court has held that the extraordinary remedy of mandamus, though on the law side of the court, is limited as to time by the equitable doctrine of laches; and that the burden of showing sufficient excuse for what appears from the record to be an unreasonable delay in the assertion of a clear legal right

through the remedy of mandamus rests upon the person asserting such right. Points 1 and 2, syllabus, *State ex rel. Kay* v. *Steinmetz*, 144 W. Va. 802, 111 S. E. 2d 27; *Rhodes* v. *Board of Education of Clark District, Harrison County*, 95 W. Va. 57, 120 S. E. 183. See also *State ex rel. Musick* v. *Londeree*, 145 W. Va. 369, 115 S. E. 2d 96; *Hertzog* v. *Fox*, 141 W. Va. 849, 93 S. E. 2d 239; *Cunningham* v. *City of Huntington*, 97 W. Va. 672, 125 S. E. 810. Though the delay was considered not to have been unreasonable and the writ was awarded, this Court, in point 6 of the syllabus in the *Rhodes* case, used this pertinent language: "Mandamus may be refused where relator has unreasonably delayed his application therefor, by reason whereof the rights of respondent or innocent third parties will be prejudiced by issuance of the writ. In determining what constitutes such unreasonable delay justifying invocation of the equitable doctrine of laches, the circumstances which justified delay, the character of the case, situation of the parties, nature of relief demanded, and whether the rights of third parties have been innocently acquired, should be considered. * * *." The writ of mandamus will be refused when the petitioner has unreasonably delayed his application for such writ and by reason of the delay the rights of the defendant or innocent third parties will be prejudiced by the issuance of the writ. The petitioner has failed to establish any valid or sufficient excuse or justification for its delay of more than three months after the contract was signed by the Director before asserting any right claimed by it by instituting this proceeding. An unsuccessful bidder who would challenge in mandamus the action of the Director of Purchases in rejecting his bid and in signing a contract with another bidder must act promptly and institute a proceeding for that purpose before there has been a substantial part performance of the contract. That has not been done in connection with the bids and the contract involved in this proceeding.

There is no merit in the contention of the defendant that a prior demand by the petitioner was necessary before the institution of this proceeding. It is clear that such a demand would have been futile and that the Director would

have ignored and refused to comply with such demand. In that situation no prior demand that a public official perform his duty is required before relief may be sought in a mandamus proceeding. In *Carter* v. *City of Bluefield*, 132 W. Va. 881, 54 S. E. 2d 747, this Court held in point 1 of the syllabus that "As a general rule, the petitioner, before instituting a proceeding in mandamus, must demand performance of the act or the duty which he seeks to enforce; but when it appears that a demand would be useless or unavailing it need not be made." See also *State ex rel. Daugherty* v. *County Court of Lincoln County*, 127 W. Va. 35, 31 S. E. 2d 321; *Frantz* v. *County Court of Wyoming County*, 69 W. Va. 734, 73 S. E. 328; *Fisher* v. *The City of Charleston*, 17 W. Va. 595.

Inasmuch as the contract signed by the Director is a valid contract and will not be disturbed, it is unnecessary to consider or determine whether the Commissioner of Finance and Administration is a necessary party to this proceeding and no opinion is entertained or expressed on that question in the decision of this case.

This Court has held in many cases that he who seeks relief by mandamus must show a clear legal right to the remedy. *State ex rel. Greenbrier County Airport Authority* v. *Hanna*, 151 W. Va. 479, 153 S. E. 2d 284; *State ex rel. Evans* v. *Kennedy*, 145 W. Va. 208, 115 S. E. 2d 73; and the numerous cases cited in the opinions in those cases. The petitioner has not satisfied that requirement in this proceeding.

The writ of mandamus which the petitioner seeks in this proceeding is denied.

*Writ denied.*

BERRY, PRESIDENT, concurring:

I concur in the majority opinion in this case because there is neither pleading nor proof to support the statements contained in the petitioner's brief relative to the Odorite Service & Supply Company, Morgantown, West Virginia, the Crown Supply Company, Inc., South Charleston, West Virginia, and the Ohio Valley Supply Company, Huntington,

West Virginia, jointly combining and conspiring with regard to bids submitted for the products involved in this case and that Crown Supply Company and the Ohio Valley Supply Company were one and the same, in violation of Code, 5A-3-38, as amended. Had there been proper pleading or proof to support such statements in the brief, I am of the opinion that it may have warranted the granting of the writ. The omission of supporting evidence or allegation in the pleading not denied cannot afford relief in any case.

Another reason, in my opinion, for denying the writ in this case is because the Commissioner of Finance and Administration was not made a party to the proceeding, which, I think, would be necessary before any relief could be granted. I do not agree with the statement in the majority opinion that: "Inasmuch as the contract signed by the Director is a valid contract and will not be disturbed, it is unnecessary to consider or determine whether the Commissioner of Finance and Administration is a necessary party to this proceeding and no opinion is entertained or expressed on that question in the decision of this case." There is no authorization in the law for such contract to be signed by the Director but it is clearly provided in the law applicable thereto that all such contracts shall be signed by the Commissioner in the name of the State and be approved as to form by the Attorney General. Code, 5A-3-15, as amended. See my dissenting opinion in the case of *Hercules Tire Company* v. *Truman Gore, Director of Finance and Administration,* (Filed February 28, 1968). In the *Hercules* case the Commissioner had refused to sign the contract and the extraordinary proceeding in mandamus instituted in this Court was to compel him to sign it.

This question was not raised in the case of *State ex rel. Printing-Litho Inc.* v. *Wilson,* 147 W. Va. 415, 128 S. E. 2d 449, and the contract had not been signed by the Commissioner of Finance and Administration and the writ was not granted in that case.

For the reasons stated herein, I concur with the result of the majority opinion but I do not agree with some of the statements contained therein.